# BASS, RATCLIFF & GRETTON, LIMITED, v. STATE TAX COMMISSION.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 10. Argued April 21, 1924.—Decided November 17, 1924.

1. The tax imposed on foreign corporations by Art. 9–A of the Tax Law of New York, as amended, is not a direct tax on allocated income but a tax for the privilege of doing business in the State measured by allocated income of the previous year. P. 280.

2. When the business of a foreign corporation consists in a series of transactions beginning with the manufacture of goods in its home country and ending in their sale there and in other places— the profits accruing only with the sales—a State of this country in which part of the business is transacted is justified in attributing to that part a just proportion of the net profits earned by the corporation from its business as a whole during the preceding year, as a basis for a tax upon its privilege of doing local business during the year to follow. *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113; *Wallace* v. *Hines,* 253 U. S. 66, 69. P. 280.

3. A tax on a British corporation for the privilege of doing business in New York during the ensuing year computed under Art. 9–A of the State Tax Law on a portion of the total net income of the year last preceding, the portion being determined by the ratio between the value of such assets of the corporation of certain classes—real and tangible personal property, bills and accounts receivable, and shares in other corporations—as were located in New York, and the value of all its assets of those classes, *held* not arbitrary or unreasonable, and not a violation of due process of law or an unconstitutional burden on foreign commerce. P. 282.

4. A tax thus computed on allocated net income of the past year for the privilege of continuing local business during the year ensuing, should not be deemed invalid merely because the local business of the preceding year yielded no net income, especially where the state law relieves the corporation from any personal property tax. P. 284.

5. An objection to a state tax not raised before the state taxing authorities or in the state courts cannot be assigned for error and reviewed in this Court. P. 285.

198 App. Div. 963; 232 N. Y. 42, affirmed.

ERROR to a judgment of the Supreme Court of New York, entered on remittitur from the Court of Appeals, confirming a tax assessment.

*Mr. James M. Beck,* with whom *Mr. George Carlton Comstock, Mr. Robert C. Beatty* and *Mr. Harold T. Edwards* were on the briefs, for plaintiff in error.

I. The tax is unconstitutional as in effect taxing income and property without the State. *Wallace v. Hines,* 253 U. S. 66; *Union Tank Line Co.* v. *Wright,* 249 U. S. 275; *Meyer* v. *Wells, Fargo & Co.,* 223 U. S. 298; *Fargo* v. *Hart,* 193 U. S. 490; *People* v. *Knapp,* 230 N. Y. 48; 231 N. Y. 516; certiorari denied, 256 U. S. 702; *International Paper Co.* v. *Massachusetts,* 246 U. S. 135; *Looney* v. *Crane Co.,* 245 U. S. 178; *Western Union Tel. Co.* v. *Kansas,* 216 U. S. 1; *Galveston, H. & S. A. Ry. Co.* v. *Texas,* 210 U. S. 217; *Delaware, L. & W. R. R. Co.* v. *Pennsylvania,* 198 U. S. 341; *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113.

If a taxing measure purports to value the privilege of doing business within the State, it cannot arbitrarily inflate that value by operations which take place beyond its borders; neither can the taxing power increase the value of property which it taxes by attaching thereto some unrelated factor.

A State may not tax the property employed or the business done without the State. Neither may it tax the profits therefrom as such nor by taking them as a measure for the tax.

This statute is inherently arbitrary, and therefore invalid, because it wholly, or at least in a substantial degree, disregards realities and is thus intrinsically unworkable as a formula for allocating income, as the tax measure, with a fair degree of accuracy. Where income is the measure, the formula must be tested on the basis of the substantial (not necessarily mathematical) correct-

ness with which it divides income into state earned and extra-state earned.

A statute purporting to allocate income to the State must show a real design to accomplish that result. If it prescribes a rigid formula, leaving no discretion in the taxing authorities to correct inequalities, its validity depends upon the relation of the factors prescribed therein to this essential aim. If no such relation exists, the method is arbitrary. "Taxes must follow realities, not mere deductions from inadequate or irrelevant data." *Union Tank Line Co.* v. *Wright, supra,* 286.

This reasoning is in truth the fundamental basis of the unit rule which, however, has been expressly limited to common carriers, (*Adams Express Co.* v. *Ohio,* 165 U. S. 194; 166 U. S. 185), but even within its limits the unit rule has never sanctioned an arbitrary or artificial basis for computation. *Fargo* v. *Hart, supra; Meyer* v. *Wells, Fargo & Co., supra; Union Tank Line Co.* v. *Wright, supra; Wallace* v. *Hines, supra.*

In those cases, as here, the taxpayer was a foreign corporation doing business in and out of the State, and the amount of property taxable was determined by a proportion of the selected local assets to their total everywhere. The tax was held void by this Court because its basis or measure included extra-state property. This fact rendered all other considerations immaterial. The inquiry was held objective and not subjective, and the formula, means, or method by which the tax was arrived at unavailing to save the statute and tax.

II. The method of apportionment prescribed by § 214 of Art. 9–A is inherently arbitrary. *Union Tank Line Co.* v. *Wright,* 249 U. S. 283.

The real value of income produced in New York cannot be ascertained with approximate accuracy by the statute

in question and the statute is therefore inherently arbitrary for the following reasons:

1. It attempts an allocation of the entire net income, rather than that local or partially within and without, and as such includes that which is foreign. Neither the allocating assets nor the income are part of " an organic system of wide extent." *Wallace* v. *Hines, supra,* 69. Being a manufacturing corporation, the presence of a plant in one jurisdiction and a store in another does not make it such a system. *Adams Express Co.* v. *Ohio,* 165 U. S. 222; *Fargo* v. *Hart, supra; Meyer* v. *Wells, Fargo & Co., supra; Union Tank Line Co.* v. *Wright, supra.* The so-called unit rule has never been applied where no part of the basic measure was in the State.

2. It allocates income from all sources, but in proportioning ratio assets arbitrarily excludes many sources from the assets by which such income is allocated.

3. The purely arbitrary and unreasonable formula is based upon the inaccurate presumption that every dollar of ratio assets everywhere has the same yield of net income.

4. Allocation is on the basis of the " average monthly values " of the ratio assets. These are arrived at by ascertaining the value in each month, adding the twelve valuations, and dividing the result.

5. An indicium of arbitrariness in the formula is its failure to recognize an unreasonable result.

The conclusion to be drawn from a study of the scheme of allocation of this law is that it bears no relation to the net income received or earned either within or without the State, as the factors chosen are not determinative of the yield of any net income, its aggregate amount or the rate of return. Any approximation to the actual is accidental. The apportionment resulting is not income earned or received in the State of New York.

III. A tax of a foreign corporation, engaged principally in interstate or foreign commerce, on its property with-

out the State, is a direct burden on such commerce and is therefore unconstitutional. *Meyer* v. *Wells, Fargo & Co.,* 223 U. S. 298; *Bowman* v. *Continental Oil Co.,* 256 U. S. 642; *Dahnke-Walker Co.* v. *Bondurant,* 257 U. S. 282; *Eureka Pipe Line Co.* v. *Hallanan,* 257 U. S. 265; *Champlain Realty Co.* v. *Brattleboro,* 260 U. S. 366; *Phipps* v. *Cleveland Refg. Co.,* 261 U. S. 449; *Western Union Tel. Co.* v. *Kansas,* 216 U. S. 1; *Looney* v. *Crane Co.,* 245 U. S. 178; *International Paper Co.* v. *Massachusetts,* 246 U. S. 135.

IV. The tax is unconstitutional as based on an allocation which includes the value of shares of stocks of other corporations to the extent of ten per centum only of the real and tangible personal property. *People* v. *Knapp,* 230 N. Y. 48.

V. The reasons given in the opinion of the Court of Appeals do not sustain the statute or the tax.

The brief for the defendant in error deals with a conceded lack of any net income whatever in the State and a consequent apportionment of net income earned wholly in foreign countries. It seeks to escape the consequences of such a resort to a foreign measure for a state tax, in effect taxing income without the State, by reasoning that there were some taxable assets in the State and a tax could have been imposed thereon. Therefore, in the absence of such a lawful tax, the tax imposed by the statute may be taken as a substitute. None of the cases cited (*Shaffer* v. *Carter,* 252 U. S. 37; *U. S. Glue Co.* v. *Oak Creek,* 247 U. S. 321; *Maxwell* v. *Bugbee,* 250 U. S. 525) supports such conclusion. See *International Paper Co.* v. *Massachusetts,* 246 U. S. 135.

*Mr. Carl Sherman,* Attorney General of the State of New York, and *Mr. C. T. Dawes,* for defendant in error, submitted.

The State is taxing a privilege to carry on a business within its borders. It is not a tax on income, but total net income of the corporation is apportioned upon the

basis of capital invested here and business carried on here, and such apportioned net income is used as a measure of the value of the franchise. *People* v. *Knapp,* 187 App. Div. 89; 227 N. Y. 64; *Bass, Ratcliff & Gretton, Ltd.* v. *State Tax Comm.,* 232 N. Y. 42; *New York* v. *Jersawit,* 263 U. S. 493.

Such a tax can be measured in any fashion the State desires (*Home Ins. Co.* v. *New York,* 134 U. S. 594; *Kansas City, etc., Ry. Co.* v. *Kansas,* 240 U. S. 227; *Flint* v. *Stone Tracy Co.,* 220 U. S. 107; *Cadwalader* v. *Lederer,* 273 Fed. 879,) but the plan, of course, must stand the test of constitutionality with regard to the result it works.

Even assuming the tax were an income tax upon corporations, if the method of taking part of entire net income produces no heavier burden than a tax upon the conduct of the business in New York measured in another way, then the statute is a fair and equitable one. *Shaffer* v. *Carter,* 252 U. S. 37; *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113.

Under the New York statute all of plaintiff in error's real and tangible personal property in foreign countries, its bills and accounts receivable and corporate stocks owned in foreign countries have been assigned outside the State and operate to lessen the New York tax. Property across the seas is brought into consideration upon the same principle as has been property located in this country but outside the taxing State. *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113; *U. S. Glue Co.* v. *Oak Creek,* 247 U. S. 321; *Gorham Mfg. Co.* v. *State Tax Commission,* 274 Fed. 975. See *Wallace* v. *Hines,* 253 U. S. 66; *Postal Telegraph-Cable Co.* v. *Fremont,* 255 U. S. 124; *Pullman Co.* v. *Adams,* 189 U. S. 420; *Williams* v. *Talladega,* 226 U. S. 404; *Postal Telegraph-Cable Co.* v. *Richmond,* 249 U. S. 252; *Maxwell* v. *Bugbee,* 250 U. S. 525; *Kansas City, etc., Ry. Co.* v. *Kansas,* 240 U. S. 227.

The tax is a substitute for a personal property tax, and the burden is no greater than such a tax would produce.

The plaintiff is not in position to claim unconstitutionality because of the limitation of its stock-holdings in other corporations to ten per centum of its real and tangible personal property.  It made no such claim before the State Tax Commission.  *People* v. *Knapp,* 230 N. Y. 48.

*Mr. Ernest G. Metcalfe* and *Mr. Randolph W. Branch,* by leave of Court, filed a brief as *amici curiae.*

MR. JUSTICE SANFORD delivered the opinion of the Court.

This case involves the constitutional validity of Article 9-A of the Tax Law of New York under consideration in *Gorham Manufacturing Co.* v. *State Tax Commission,* No. 5, just decided, *ante,* 265.

This article [1] provides that for the privilege of doing business in the State a foreign manufacturing and mercantile corporation shall pay, in advance, an annual franchise tax, to be computed by the State Tax Commission, at the rate of three per centum, upon the net income of the corporation for the preceding year.  §§ 209,[2] 215. This net income is " presumably the same " as that upon which the corporation is required to pay a tax to the United States, § 209; but the amount thereof as returned to the United States is subject to any correction for fraud, evasion or errors, ascertained by the Commission.  § 214. If the entire business of the corporation is not transacted

---

[1] Consol. Laws of 1909, c. 60, as amended by the Laws of 1917, c. 726, and the Laws of 1918, c. 271, c. 276, and c. 417.  See the opinion in the *Gorham Mfg. Co. Case,* note 2, *ante,* 266.

[2] This section is entitled: " Franchise tax on corporations based on net income."

within the State, the tax is to be based upon the portion of such ascertained net income determined by the proportion which the aggregate value of specified classes of the assets of the corporation within the State bears to the aggregate value of all such classes of assets wherever located. The classes of assets which are to enter into this ratio—hereinafter termed the segregated assets—are: real property and tangible personal property; bills and accounts receivable resulting from the manufacture and sale of merchandise and services performed; and shares of stock owned in other corporations, not exceeding ten per centum of the real and tangible personal property, which are to be allocated according to the location of the physical property representing such stock. § 214.[3] The corporation is to be exempt from any personal property tax. § 219-j.

Bass, Ratcliff & Gretton, Ltd., is a British corporation, engaged in brewing and selling Bass's ale. All its brewing is done and a large part of its sales are made in England; but it formerly imported a portion of its product into the United States which it sold through branch offices

---

[3] The average value of the shares of stock is taken; the average monthly value of the other assets. The entire provision as to the allocation of net income, which is here broadly summarized, is set forth in the margin of the opinion in *People* v. *Knapp*, 230 N. Y. 48, 53.

This Article also provides that the corporation shall make a report to the Commission showing its net income as returned to the United States and the matters which are to enter into the allocation of the net income; that the Commission shall state the account and compute the tax; and that, if an application for revision is made, the Commission shall grant a hearing, upon evidence, and adjust the tax, "according to law and the facts." And it further provides for a review of the determination of the Commission, upon certiorari by the Supreme Court, both upon the law and the facts; and for an appeal from the Supreme Court to the Court of Appeals. These various provisions are set forth in the opinion in the *Gorham Mfg. Co. Case.*

located in New York City and in Chicago. On its report to the New York Tax Commission—amended under protest—the Commission computed and assessed its franchise tax for the year commencing November 1, 1918. At a hearing granted on an application for revision, the Commission adhered to the original assessment. The Company then paid the tax under protest. The determination of the Commission was subsequently confirmed, upon a writ of certiorari, by the Appellate Division of the Supreme Court, 198 App. Div. 963; and the order of that court was affirmed, upon appeal, by the Court of Appeals. 232 N. Y. 42. The record was remitted to the Supreme Court, to which this writ of error was directed. *Hodges* v. *Snyder,* 261 U. S. 600.

It is undisputed that, for the year preceding that for which this franchise tax was assessed, the Company, as reported to the United States, had no net income upon which it was subject to a federal income tax. Its total net income, however, from all its business, wherever carried on, was $2,185,600.[4] The value of its segregated assets, wherever located, was: real property, $785,675; tangible personal property, $2,105,105; bills and accounts, $321,625; and shares of stock of other corporations, $845,195. Limiting the value of the shares of stock to ten per centum of the aggregate real and tangible personal property, that is, to $289,078, made the aggregate value of its segregated property, wherever located, $3,501,483. The value of its segregated assets in New York was as follows: bills and accounts, $20,449; and tangible personal property, $23,668. This made the aggregate value of its segregated property in New York $44,117. Taking the entire net income, $2,185,600, as the basis for the assessment of the tax, the Commission allocated to New York

---

[4] If the corporation is organized under the laws of another country it is required to state its entire net income. § 211.

the proportion thereof which the segregated assets in New York bore to the segregated assets wherever located, amounting to $27,537.68; and upon this sum computed the franchise tax, at the rate of three per centum, that is, $826.14.

The Company contends that this tax is not based upon any net income derived from the business which it carried on in New York but upon a portion of its net income derived from business carried on outside of the United States which under the provisions of the statute has been arbitrarily allocated to its New York business, and that such imposition of the tax deprives it of its property in violation of the due process clause of the Fourteenth Amendment and imposes a direct burden upon its foreign commerce in violation of the commerce clause of the Constitution.

1. We see no reason to doubt the accuracy of the statement made by the Court of Appeals in the present case that the franchise tax imposed by the statute is " primarily a tax levied for the privilege of doing business in the State." It is not a direct tax upon the allocated income of the corporation in a given year, but a tax for the privilege of doing business in one year measured by the allocated income accruing from the business in the preceding year. See *New York* v. *Jersawit,* 263 U. S. 493, 496.

2. The question of the constitutionality of this tax as applied in the present case is controlled, in its essential aspects, by the decision in *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113, 120. There the Connecticut statute imposed upon foreign corporations doing business partly within and partly without the State an annual tax of two per cent. upon the net income earned during the preceding year on business carried on within the State, ascertained by taking such proportion of the whole net income on which the corporation was required to pay a

tax to the United States as the value of its real and tangible personal property within the State bore to the value of all of its real and tangible personal property. The Underwood Typewriter Company, a Delaware corporation, was engaged in manufacturing and selling typewriters and supplies. All its manufacturing was done in Connecticut, but the greater part of its sales was made from branch offices in other States. It contended that the tax was an unconstitutional burden on interstate commerce; and that it violated the Fourteenth Amendment in that it imposed, directly or indirectly, a tax on income arising from business conducted outside of the State. In support of the latter objection it showed that while 47 per cent. of its real estate and tangible personal property was located in Connecticut, resulting, under the method of apportionment of the net income required by the statute, in attributing 47 per cent. of its total net income to the operations in Connecticut, in fact about $1,300,000 of its net profits were received in other States and only about $43,000 in Connecticut. The court, in sustaining the validity of the tax, said: " But this showing wholly fails to sustain the objection. The profits of the corporation were largely earned by a series of transactions beginning with manufacture in Connecticut and ending with sale in other States. In this it was typical of a large part of the manufacturing business conducted in the State. The legislature in attempting to put upon this business its fair share of the burden of taxation was faced with the impossibility of allocating specifically the profits earned by the processes conducted within its borders. It, therefore, adopted a method of apportionment which, for all that appears in this record, reached, and was meant to reach, only the profits earned within the State. ' The plaintiff's argument on this branch of the case,' as stated by the Supreme Court of Errors, ' carries the burden of showing that 47 per cent. of its net income is not reason-

ably attributable, for purposes of taxation, to the manu-
facture of products from the sale of which 80 per cent. of
its gross earnings was derived after paying manufactur-
ing costs.' The corporation has not even attempted to
show this; and for aught that appears the percentage of
net profits earned in Connecticut may have been much
larger than 47 per cent. There is, consequently, nothing
in this record to show that the method of apportionment
adopted by the State was inherently arbitrary, or that its
application to this corporation produced an unreasonable
result."

So in the present case we are of opinion that, as the
Company carried on the unitary business of manufac-
turing and selling ale, in which its profits were earned
by a series of transactions beginning with the manufac-
ture in England and ending in sales in New York and
other places—the process of manufacturing resulting in
no profits until it ends in sales—the State was justified in
attributing to New York a just proportion of the profits
earned by the Company from such unitary business. In
*Wallace* v. *Hines*, 253 U. S. 66, 69, it was recognized that
a State, in imposing an excise tax upon foreign corpora-
tions in respect to doing business within the State, may
look to the property of such corporations beyond its bor-
ders to "get the true value of the things within it, when
they are part of an organic system of wide extent," giving
the local property a value above that which it would
otherwise possess, and may therefore take into account
property situated elsewhere when it " can be seen in some
plain and fairly intelligible way that it adds to the value
of the [property] and the rights exercised in the State."
This is directly applicable to the carrying on of a unitary
business of manufacture and sale partly within and partly
without the State.

Nor do we find that the method of apportioning the
net income on the basis of the ratio of the segregated

assets located in New York and elsewhere, was inherently arbitrary or a mere effort to reach profits earned elsewhere under the guise of legitimate taxation. The principal factors entering into this allocation are, as in the *Underwood Case,* the real and tangible personal property of the corporation. We see nothing arbitrary in also including bills and accounts receivable resulting from the manufacture and sale of merchandise and services performed, or in taking average monthly values as the measure of all the segregated assets except shares of stock. And in the present case the inclusion of a portion of the shares of stock in other corporations,—none of which were allocated to New York—resulted in the Company's favor, and reduced the income allocated to New York to less than it otherwise would have been.

It is not shown in the present case, any more than in the *Underwood Case,* that this application of the statutory method of apportionment has produced an unreasonable result. The fact that the Company may not have had any net income upon which it was subject to payment of income tax to the Federal Government, obviously does not show that it received no net income from the business which it carried on in New York. There is no evidence in the record as to whether the Company received any net income from its New York business, or the amount of the profit and loss on that business, if any, either considered separately or in connection with the manufacturing business carried on in Great Britain.[5]

---

[5] The statement in the opinion of the Court of Appeals that the Company's "net income from the New York business was nothing", was apparently made inadvertently. There is no showing except as to the gross sales, and the "expenses", which were about one-fourth of the gross sales; nothing appearing as to manufacturing costs or other charges; and nothing from which the question of ultimate net profit or loss that entered either into the separate business in New York or into the total net income of the Company accruing from the manufacture and sale of the ale, can be ascertained.

3. Furthermore, the statutory method of apportionment not being shown to be arbitrary or unreasonable, we think that the Court of Appeals rightly held that the tax imposed for the carrying on of the business in New York is not invalid merely because in the preceding year the business conducted in New York may have yielded no net income. There is no sufficient reason why a foreign corporation desiring to continue the carrying on of business in the State for another year—from which it expects to derive a benefit—should be relieved of a privilege tax because it did not happen to have made any profit during the preceding year. This is especially true where, as in the present case, the corporation is entirely relieved of any personal property tax. See *U. S. Express Co.* v. *Minnesota*, 223 U. S. 335, 346.

4. The Company furthermore urges that in any event it should have been permitted to include in the statutory ratio the entire value of the stocks which it owned in other corporations. This contention is based upon the fact that, in the previous case of *People* v. *Knapp*, 230 N. Y. 48, it had been held that in so far as the statute provided that in the allocation of income the value of stocks of other corporations should not be taken into consideration beyond ten per cent. of the real and tangible personal property, although the entire dividend from such stocks was included in the net income which was the basis of the allocation, the statute was unconstitutional, and that the taxpayer in such case should be permitted to include in the statutory allocation the entire value of the stocks which it owned in other corporations. As to this matter it is sufficient to say that it does not appear from the record in the present case that the shares of stock which the Company owned in other corporations had yielded any dividends which were included in its total net income; and further, that this question, so far

as appears from the record, was not raised by the Company either before the Commission or the state courts, in each of which its objections to the validity of the tax were phrased in terms having no reference to this specific question. And not having been raised in the Court of Appeals or passed on by that court, it is not a question which can now be reviewed by this Court under an assignment of errors raising it here for the first time.

The judgment of the Court of Appeals is accordingly

*Affirmed.*

Mr. JUSTICE McREYNOLDS dissents.