107 So.2d 676

**The TEXAS COMPANY**

v.

**W. A. COOPER, Collector of Revenue.**

No. 42733.

Dec. 15, 1958.

Rehearing Denied Jan. 12, 1959.

Richard S. Lake, George E. Burgess, Jr., Hugh M. Wilkinson, Sr., Hugh M. Wilkinson, Jr., New Orleans, for appellant.

Chapman L. Sanford, Levi A. Himes, Roy M. Lilly, Jr., Baton Rouge, Philip N. Pecquet, for appellee.

TATE, Justice.

The Texas Company brought suit to recover income taxes paid under protest for the years 1950, 1951, and 1952, in the total amount of $1,183,539.44, and appeals from judgment dismissing its demand.

The central questions of this appeal concern whether the Collector (as held by the trial court) may—for Louisiana state income tax purposes—require the taxpayer to report his income by the separate accounting method, rather than (as the taxpayer argues) the taxpayer having the right to use a statutory apportionment method. The crux of the taxpayer's position is its argument that the Collector does not possess the statutory power to require its income to be determined by the separate accounting method, and its further argument that if the statute attempts to confer such power such provision offends State and Federal constitutional limitations upon the taxing power of the State.

We shall liberally quote from the opinion of the learned trial judge which comprehensively discusses and correctly disposes of the issues raised. The trial court described the statutory and factual setting of this litigation in these terms:

"The Texas Company, plaintiff herein, is a foreign corporation. For many years it has been engaged on a large scale in all phases of the oil business. Its petition alleges that the plaintiff operates eleven oil refineries and three asphalt plants in the United States elsewhere than in Louisiana. These refineries and plants have a daily crude oil capacity of 510,000 barrels. In the year 1950, being the first tax year in question herein, the plaintiff produced by exploration and field development crude oil and condensate from fifteen states including Louisiana and three foreign countries a net production of approximately 103,000,000 barrels and purchased in the United States and foreign countries crude oil and condensate approximately 168,000,000 barrels. In that same period the net production of the crude oil and condensate by plaintiff in Louisiana was about 30,000,000 barrels and plaintiff purchased in Louisiana from other producers additional quantities of crude oil, which was commingled with company produced oil and disposed of by two methods: (1) sold to purchasers in Louisiana, or (2) transported out of the State to company refineries.

"Pursuant to our Constitution of 1921, Article X, Section 1 [LSA], the Legislature in 1934, enacted Act 21, being the first income tax law in this state. Section 1 of that Act, now [LSA–]R.S. 47:31, Sub-section (4), provides that 'Foreign corporations shall be taxed on net income from sources within the State, as hereinafter set out.' See also, [LSA–]R.S. 47:161B.

"The provisions of [LSA–]R.S. 47:-241, 242, 243, 244, 245 and 246 define the manner in which the net income earned by a foreign corporation from sources within the state is to be deter-

mined and prescribe two methods of determining the amount of income tax to be paid in this State: (1) The *separate accounting method,* by adding all the rents, royalties, profits and all other income derived from operations and business done in Louisiana, from the gross of which there shall be taken all expenses and other deductions attributable to the business transactions in this state, and (2) the *apportionment method* by the application of a formula consisting of the arithmetical average of three ratios: (a) the ratio of the value of the property used and located in Louisiana to the value of all property used by the taxpayer; (b) the ratio of the amount of the payroll in this State to the total payroll, and (c) the ratio of the amount of gross sales· and other income attributable to this State to the total gross sales. The details guiding the employment of both of which methods are spelled out in the law as amended in 1948 and in the regulations prescribed by the Collector of Revenue.

"The taxpayer and Collector of Revenue are possessed of certain rights to change the method of determining the net allocable income under the provisions of Section 244, a portion of which has particular application to the facts and issues of this suit, and I quote that portion here:

[The omitted first two paragraphs of LSA-R.S. 47:244 are:

"[1st] From the total gross apportionable income, as provided in R.S. 47:242(2), there shall be deducted all expenses, losses, and other deductions, * * * allowable under this Chapter, which are directly attributable to such income; and there shall also be deducted a ratable portion of allowable deductions, * * * which are not directly attributable to any item or class of gross income. The remainder shall be the total net apportionable income (or loss).

"[2nd] The net apportionable income derived from sources in this state shall be computed by multiplying the total net apportionable income by the Louisiana apportionment per cent determined in accordance with the provisions of R.S. 47:245."]

"[3rd] 'In lieu of the apportionment as provided in this Section, a taxpayer may apply to the Collector for permission to compute the net apportionable income derived from sources in this state by means of the separate accounting method. The collector shall grant such permission if the taxpayer shows that the apportionment method produces a manifestly unfair result, and that the unit of the taxpayer's business operating in this state could be

successfully operated independently of the units in other states, and makes all of its sale in this state or derives all of its gross revenues from sources in this state, and any merchandise or products sold by the unit in this state are either:

" '(1) Produced by the taxpayer in Louisiana,

" '(2) Purchased by the taxpayer from non-affiliated sources within or without this state,

" '(3) Purchased from an affiliated source at not more than the price at which similar merchandise or products in similar quantities could be purchased from non-affiliated sources, or

" '(4) Transferred from another department of the taxpayer's business at not more than the actual cost to the taxpayer; or where it is otherwise shown to the satisfaction of the collector that the apportionment method produces a manifestly unfair result and that the separate accounting method produces a fair and equitable determination of the amount of net income taxable in this state.

"[4th] 'If such permission is granted by the collector, the taxpayer shall compute the net apportionable income derived from sources in this state by means of a separate accounting method which shall comply with the regulations to be prescribed by the collector. When

a taxpayer has secured permission to employ the separate accounting method, a change to the method of apportionment shall not be made for any subsequent year without securing the permission of the collector.

"[5th] *'When the collector finds that the use of the apportionment method by a taxpayer produces a manifestly unfair result and that the separate accounting method would more equitably determine the amount of net income derived from sources in Louisiana, he may require that the separate accounting method be used in such case.*

"[6th] *'Whenever there shall be a contest between the taxpayer and the collector as to whether the separate accounting method or the apportionment method should be used, the burden shall be upon him who urges the use of the separate accounting method to show that the apportionment method produces a manifestly unfair result.'* [Italics ours. These are the statutory provisions, interpretation of which is in dispute.]

"Beginning with the first year of the imposition of State income taxes in Louisiana the Act of the Legislature did not define the apportionment formula of ratios as later contained in the amendment of 1948. I assume that the Collector's regulations did prescribe

that method. The plaintiff used that method in Louisiana through 1949. On December 22, 1950, the Collector wrote the plaintiff a letter informing it as follows:

" 'In accordance with the provisions of [LSA–]R.S. 47:244, it has been determined that the use of the apportionment method of accounting in computing your net apportionable income derived from Louisiana sources produces a manifestly unfair result and that the separate accounting method will more equitable determine the amount of net income derived from sources in Louisiana. Therefore, you are directed to use the separate accounting method in computing your net income from Louisiana operations and your Louisiana income tax liability thereon for the taxable years beginning on or after January 1, 1950. The enclosed Regulations prescribe the methods to be employed in computing your Louisiana net apportionable income on a separate accounting basis.'

"Thereafter, the plaintiff protested the change and proceeded to file its 1950 income tax returns and compute and pay its 1950 tax by the apportionment method. According to the testimony of plaintiff's witness, John H. Stanley, who was plaintiff's accountant, by the use of the three factor formula the net 1950 taxable income attributable

to transactions in Louisiana was $1,458,465.33 on which the tax paid was $58,336.35.

"The taxpayer having failed to compute the tax and make returns in accordance with the Collector's directive of December 22, 1950, quoted above, the Collector caused an audit of the plaintiff's books and accounts to be made by the separate accounting method to determine the tax due by the plaintiff, which the Collector was authorized to do by [LSA–]R.S. 47:1562.

" * * * [Excerpted here by the trial court is testimony of the taxpayer's accountant to the effect that under the direct or separate method of accounting, the net taxable income of taxpayer attributable to Louisiana for 1950 is shown to be $13,168,888.11 upon which there was a Louisiana income tax liability of $526,734.84, as contrasted to the much lower figures above quoted based upon use of the apportionment method to determine income derived from Louisiana sources.]

"After the determination of the amount of net income by the separate accounting method the Collector calculated the tax deficiency for 1950 to be the amount of $468,398.49, which the Collector called upon the plaintiff to pay, plus the statutory interest accrued to April 4, 1952, in the amount of $24,-

975.90. Agreeably to the provisions of the law the plaintiff paid unto the Collector under protest the sum of $493,-374.39, with notice of plaintiff's intention to file suit for the recovery of the amount. This is that suit.

"By supplemental petition and on similar allegations as contained in the original petition the plaintiff alleges that the Collector determined for 1951 a tax deficiency and penalty amounting to $383,818.19, which amount the plaintiff paid under protest and now seeks to recover herein.

"By a second supplemental petition the plaintiff shows that for the year 1952 the Collector found by the separate accounting method a tax deficiency with interest in the amount of $306,-346.86, which the plaintiff paid under protest and now seeks to recover."

■ The factual foundation of much of the taxpayer's legal argument rests upon its allegations that it is impossible and inequitable to attribute any direct profit to its Louisiana production operations since, due to the unitary nature of this worldwide corporation's operations, each stage of the product's progress from production through refining to distribution to ultimate marketing is so interdependent that only the final gain

(or loss) can be considered realized without identification of any particular process as the source of any part of the eventual corporate profit or loss. Our learned brother of the trial bench correctly disposed of such contentions in these words:

" * * * As I understand plaintiff's allegations and counsel's argument this claim is asserted on the theory that the business of The Texas Company of gathering raw materials, refining, manufacturing and selling is strictly a unitary operation so that each step is so linked with every other step wherever taken that the whole is a single unit to the extent that it is impossible to make a separate accounting of the Louisiana transactions to determine the net income attributable to sources arising within the state. Plaintiff further contends that if it be held that the separate accounting method would more equitably determine the amount of such net income, then the defendant Collector has not borne the burden of proof that the apportionment method produced a manifestly unfair result.

"In the first place, counsel for plaintiff has not favored the Court with any judicial decree holding that corporations engaged in the petroleum industry are unitary in character.[1] * * * It is

1. To the contrary, on appeal the Collector cites the following cases which in each instance upheld the taxpayer's (oil

company) contention to the effect that company operations similar to those of the present taxpayer were not so unitary

my opinion that Louisiana, having the right to collect a tax imposed on net income, has the right to determine what that income is in relation to the business transacted within the state if that can be done fairly and equitably even though the net income by that separate accounting method is more than what would be the state's aliquot portion of the earnings based on the statutory formula of apportionment of the nationwide operations.

"This plaintiff does not operate any refinery or factory in Louisiana. Its principal business in this state is the production of crude oil from its own wells and leases and the acquisition of oil by purchase. It commingles the oil produced and purchased, some of which it sells in the state on the market and the remainder of which it transfers out of the state to its refineries and factories and thereafter the finished products are sold throughout the world. The connection between the raw materials howsoever gathered in Louisiana and the refining and selling the finished products grow out of the unit

of ownership, but the fact that the plaintiff sells a great deal of raw materials in Louisiana in the open market is evidence that if there is a margin of equity (or loss) resulting from the Louisiana transactions it can be determined with accuracy. The fact that the plaintiff can make a unit accounting of every step of its operations from the moment the crude oil comes to the surface until the sale of the refined product in all parts of the world convinces me that if there is a profit in the oil above the cost of production or purchase in Louisiana the margin of profit can be determined by an expert accountant as of the moment the oil leaves the state. An example of a unitary business where it would seem to be impossible to make a separate accounting of income within the boundaries of a state would be an express company, a telephone or telegraph company, in which the whole operation 'constitutes but a single plan, made so by the very character and necessities of the business.' * * *

in nature that the company was precluded from using the separate accounting method to determine intrastate profits as against the taxing authorities' attempts to utilize the apportionment method of fixing the taxpayer's share of income attributable to the taxing States respectively: Magnolia Petroleum Co. v. Oklahoma Tax Commission, 1941, 190

Okl. 172, 121 P.2d 1008; Standard Oil Co. v. Wisconsin Tax Commission, 1929, 197 Wis. 630, 223 N.W. 85; Standard Oil Co., Indiana, v. Thoresen, Tax Comm'r, etc., 8 Cir., 1928, 29 F.2d 708; Fisher v. Standard Oil Co., 8 Cir., 1926, 12 F.2d 744. No decisions holding the converse are cited to us.

"Plaintiff's witness admitted that plaintiff's net income is determined and the tax calculation is made in Arkansas, Mississippi, Kansas and New Mexico by the separate accounting method. This evidence was admitted for the restricted purpose of showing that the separate accounting method is possible in the kind of business operated by the plaintiff and to show that the separate method is actually employed by this plaintiff. Plaintiff's business in those four states is comparable to its business in Louisiana, except that the volume of production in Arkansas is smaller than it is in Louisiana. Plaintiff has no refinery or factory in those four states and it produces and buys crude oil transported out of the states to its refineries and factories elsewhere.

"Plaintiff contends that it is not possible from an accounting standpoint to determine the net income from its transactions in Louisiana by the separate accounting method. Not only does plaintiff actually use that method in those states where it wants to use it, but it appears to me that in Louisiana in order to find the arithmetical ratios which constitute the statutory formula used in the apportionment method, it is absolutely necessary to keep an account of and show the separate values and amounts of the property, payrolls and sales of this plaintiff's business transacted in Louisiana, which are fundamental steps and basic information for a separate accounting. It is inconsistent to say that a separate accounting cannot be made when the apportionment formula cannot be known without a separation of the principal items of the Louisiana transaction used in determining net income.

"At page 24 of his essay filed in evidence by the plaintiff (Duncan-One) Mr. Duncan quotes Altman and Keesling's Allocation of Income in State Taxation [2nd Ed., 1950] favoring the apportionment method and that quotation includes the statement: 'Thus, in this field, as in many other fields, the ideal cannot be obtained. Something less than perfection must suffice.' That could as well apply to the separate accounting if its use does not produce the true net income, but I see no reason why the separate accounting method applied to the oil gathering operations should not be as accurate as plain bookkeeping can and should be. While there is no testimony on the subject I can perceive more difficulty or inaccuracy when the separate method is applied to sales of the refined products brought into the state, but as quoted above 'the ideal cannot be obtained.' Plaintiff has not attacked the determination made by the Col-

lector as to any inaccuracy in accounting except merely to say 'It can't be done.'

\*  \*  \*  \*  \*  \*

"If some of the oil produced and purchased in Louisiana is sold undoubtedly it would be sold at the market and it certainly would not be unreasonable to give the oil sent out of the state the same market value as of the date of the transfer, and determine the net business in Louisiana on that basis. As stated in Altman and Keesling's book, page 38:

" 'If any goods manufactured within the state are sent into another state for further processing, they would for the purpose of separate accounting be treated as transferred to the next process at the price which could be obtained in the trade for them in their stage of completion at that time.'

Here the process and accounting should be simple because the transfer of the crude out of the state as raw materials has a value easily ascertainable at any moment of the day. There is nothing done to the crude in Louisiana that benefits the business or operations done elsewhere, and, therefore, the production and purchase of crude oil in Louisiana is a complete step and not necessarily linked with the refining, distribution and sales elsewhere. The regulations for separate accounting prescribed by the Collector (Plaintiff's Exhibit B-2) makes the calculation simple, direct and free of the nebulous ratios to be used in a strictly unitary business.

"As stated in Bass, Ratcliff and Gretton [v. State Tax Comm., 266 U.S. 271, 45 S.Ct. 82, 69 L.Ed. 282] case the fact that the company may not have had any net income upon which it was subject to payment of income tax to the Federal government obviously does not make certain that the company received no net income for the business it carried on in New York. That is the same situation now before this court.

"At page 90 of Altman and Keesling's book it is said: 'Where the business within a state is truly separate and distinct from the business without the state this segregation can be made fairly, easily and accurately, and, accordingly, the separate accounting method may properly be used.'

"That work goes on to say that where the business within the state is not separate, but is an integral part of a unitary business carried on within and without the state, difficulties will be encountered in determining the income and expenses attributable to the state, and that the principal objection

to the apportionment method is that it is apt to be arbitrary and to represent merely the opinion of the taxpayer, which may be biased. Therefore, if The Texas Company business is a unit from beginning to end and the Louisiana transactions cannot be separated to determine the net income from them, then that is all there is to this case and judgment would have to be for plaintiff as prayed for. The evidence in this case convinces me that a separate accounting of the Louisiana operations can properly be applied to determine the Louisiana net income. It is done by this plaintiff in other states where its operations are exactly the same as here and the Collector has demonstrated that it can and should be done in Louisiana."

The statutory power here sought to be exercised by the Collector was first conferred upon him by Section 1 (Section 65 thereof) of Act 354 of 1948 (found in the Revised Statutes as 47:244 and above-quoted in full). Act 354 of 1948 resulted from the legislative acceptance, with substantial modifications, of the report of the Louisiana Revenue Code Commission created to make recommendations to simplify and improve the tax structure. Act 245 of 1944, as amended by Act 245 of 1946. The report of this Commission exhaustively discussed then-existing tax statutes and made detailed suggestions for changes and the reasons therefor. Projet of a Revenue Code for the State of Louisiana (1948) (hereinafter referred to as "Projet").

To avoid the difficulty which had previously been encountered in the administration of the tax law because of the absence of a statutory guide, the Commission made specific recommendations regarding the occasions for the use of the apportionment formula or the separate accounting method in the determination of net income of foreign corporations attributable to Louisiana. Projet, 148–9, 168–177. With an important modification to which we will refer below, the legislature accepted these recommendations by the passage of Sections 34 (now LSA–R.S. 47:161) and 62 through 68 (LSA–R.S. 47:241 through 247, substantially all of Sub-Part "Foreign Corporations" of Part II of the Income Tax Chapter of the Revenue Title), of Section 1 of Act 354 of 1948.

We are thus unable to see any force whatsoever to the appellant's contention that any weight should be accorded to the administrative construction of the tax laws from 1934–1949 which permitted the taxpayer to compute its Louisiana income by an apportionment formula *before* the Collector was granted the statutory power to compel the use of the separate accounting method to compute State income tax liability. Standard Oil Co. of New Jersey **v.** Collector of Revenue, 210 La. 428, 27 So. 2d 268, cited by appellant in support of this

argument held that adoption in our state income tax statute of provisions taken verbatim from the federal tax enactment could under the circumstances indicate a legislative intent to accept the meaning assigned thereto by federal administrative interpretation. This decision is, as the trial court found, completely inapplicable to the present situation and is certainly not authority for any theory that the Collector may not issue regulations interpreting a statute in accordance with the legislative intent; nor is it authority for any hypothesis that the Collector is bound by his administrative interpertations of previous statutory provisions in the construction of more recent differing legislation.

For like reasons, we do not find persuasive, if at all relevant, arguments based upon the wording of Section 34 of Act 21 of 1934[2] as amended by Act 7 of the 2nd Extra. Sess. of 1934,[3] and also upon the circumstance of the amendment, that a pos-

itive legislative intent is shown not to tax out-of-state sales except by the apportionment system and not to permit a recognized gain for State income tax purposes unless the oil produced is actually *sold* (rather than, as here, *shipped* to a self-owned refining plant in Texas.) At the same time as the legislature conferred upon the Collector the statutory power to require separate accounting by Act 354 of 1948, the same enactment substantially changed the wording of the aforesaid Section 34 so as to specifically subject the foreign taxpayer to computation of tax "upon the net income earned within *or derived from sources* within this state" in accordance with the provisions which inter alia granted the Collector the right to require separate accounting upon making the requisite statutory determinations. Act 354 of 1948 (Section 1, Section 34 thereof), as incorporated in LSA–R.S. 47:161, especially Part B.[4]  See Projet, 146–149.

2. Section 34(b) as originally enacted provided: "In the case of a nonresident individual or * * * corporation * * * Gains, profits, and income from * * * (2) from the sale of personal property produced (in whole or in part) by the taxpayer within * * * shall be treated as derived from sources *within* the State of Louisiana." (Italics ours.)

3. By Section 19 thereof the Legislature amended Section 34 of Act 21 of 1934 so that such out-of-state sales should be treated "as derived from sources within and *partly from sources without the State of Louisiana*." (Italicized phrase added.)

4. LSA–R.S. 47:161, subd. B: "In the case of a nonresident individual or foreign corporation, items of gross income, expenses, losses and deductions, from whatever source received or incurred, not otherwise exempted by this Chapter, shall be included in the taxpayer's return; but, for the purpose of this Chapter, the amount of tax shall be computed only upon the net income earned within or derived from sources within this state, *such net income to be computed as provided in Sub-part F of Part II of this Chapter.*" (Italics ours.) The cited sub-part F, comprising Sections 241 through 249, includes in Section 244 the authorization to Collector to require the separate accounting method to be used in computing net income attributable to Louisiana sources.

█ The taxpayer further argues that in determining the legislative intent we must give weight to the reasons recommended by the Revenue Commission for adoption of Section 65 ("Computation of net apportionable income from Louisiana sources") of Act 354 of 1948 (now LSA–R.S. 47:244). Projet 175. The Commission's recommendations, it is contended, contemplated that the separate accounting method would be either permissively available to the taxpayer or a mandatory requirement of the Collector *"only"* if certain specific requirements were conjunctively met, in general contained in the 3rd paragraph of LSA–R.S. 47:244 above quoted in full, such as that the taxpayer "makes all of its sales in this state or derives all of its gross revenues from sources in this state." While we do not necessarily agree that interpretation of the version of Section 65 (LSA–R.S. 47:244) recommended by the Commission would indicate an intention to prohibit the Collector from requiring separate accounting on the part of taxpayers similarly situated to the appellant and unless they also met the statutory requisites for *permissive* separate accounting, the entire force of appellant's argument in this regard is in our view dissipated by the fact that the legislature, in enacting Section 65, specifically deleted the word "only" [5] from the recommended requirement that separate accounting be permitted in certain specified instances, and then added to this section which in its draft form limited the use of separate accounting by permission of the Collector, a proviso that ["The collector shall grant such permission"] "where it is otherwise shown to the satisfaction of the collector that the apportionment method produces a manifestly unfair result and that the separate accounting method determines a fair and equitable determination of the amount of net income taxable in this State." [6] "Adoption of an amendment is evidence that the legislature intends to change the provisions of the original bill," 2 Sutherland, Statutory Interpretation (3rd ed., 1943) Section 5015 at pp. 507–7.

Appellant vigorously argues further that the introduction of the Sevier bill (House Bill 141) in the Legislature of 1950 and its subsequent failure of passage shows an administrative interpretation by the Collector that he did not have the power to require separate accounting under the present circumstances and a legislative refusal to grant him such power.

---

5. In the recommended draft the second sentence of the third paragraph: "The Collector shall grant such permission ["to compute the net apportionable income derived from sources in this State by means of the separate accounting method"] *only* if the taxpayer shows: (1)" etc.

6. This proviso is found as the last clause of the third paragraph of LSA–R.S. 47:-244, above quoted in full.

■ While not necessarily conceding that the statute is ambiguous so as to be open to interpretation (cf. 2 Sutherland, Statutory Construction (3rd ed., 1943) Section 4702, p. 334, Sections 5001 et seq., pp. 481 et seq.), it should be noted that the taxpayer's argument in this respect does not rely upon any changes sought in the statutory section granting the Collector power to require separate accounting, LRA–R.S. 47:244 ("Computation of net apportionable income from Louisiana sources"), but instead upon changes sought in LSA–R.S. 47:245 ("Determination of Louisiana apportionment percent"); a proposed but unsuccessful amendment of the *latter* statutory section, which applies where the taxpayer is *not* accorded permission to or required to determine Louisiana net income by separate accounting, can be deemed to afford little light in the interpretation of the legislative authorization contained in the *preceding* section to require separate accounting where "the use of the apportionment method by a taxpayer produces a manifestly unfair result and that the separate accounting method would more equitably determine the amount of net income

derived from sources within Louisiana." Passage of the revised apportionment formula proposed by Section 245 of the Sevier bill might have resulted in an apportionment formula which more equitably (the State might argue) would have reflected the amount of net income derived by oil producers from sources within Louisiana and might thus have (when applied) afforded less ground for a determination by the Collector that the separate accounting method better accomplished this aim; but failure to pass such revision of the apportionment formula is not indicative, any more than passage thereof would have been, that the legislature intended to affect its grant to the Collector of power to require separate accounting in all instances where the apportionment *formula* was manifestly unfair and less equitably determined the amount of net income attributable to Louisiana.[7]

■ The Collector required the taxpayer to compute its Louisiana net income by the separate accounting method for purposes of State income taxation by virtue of the statutory authorization to do so con-

7. Even were appellant's contentions correct that the Sevier bill's rejection concerned an amendment attempt directly concerned with an alternative method to require appellant to use the same indicia as does separate accounting to measure net income for State tax purposes, the observations regarding a similar situation found at 2 Sutherland, Statutory Construction (3rd ed., 1953) Section 5015 at p. 506 are not inappropriate: "Generally, the rejection of an amendment indicates that the legislature does not intend the bill to include the provisions embodied in the rejected amendment. *However, such rejection may occur because the bill in substance already includes those provisions.*" (Italics ours.)

ferred under the 5th paragraph of LSA–R.S. 47:244, above quoted, and pursuant to his determination as required thereby that the use of the apportionment method in computing apportionable income derived from Louisiana sources "produces a manifestly unfair result and that the separate accounting method will more equitably determine the amount of income derived from sources in Louisiana." (Exhibit B–1.) The general regulation upon which this individual determination was based applied to all taxpayers "permitted or required to use the separate accounting method of computing Louisiana net apportionable income and whose business includes the production of natural resources, such as oil, gas, other liquid hydrocarbons, or sulphur, which are (a) sold by the taxpayer prior to refining or processing, or (b) transported by the taxpayer into or from the State of Louisiana for refining or processing prior to sale and at the time of production or transfer into or from this State have an ascertainable market value." [8]

In seeking by the separate accounting method to apportion or assign the profits

properly attributable to Louisiana production operations, the Collector establishes the net value of the oil produced in Louisiana by deducting the gross expenses of the Louisiana production from the market value of the oil as of the date of shipment to appellant's self-owned refinery in Texas. The taxpayer bitterly assails this formula upon the contention that the production of crude oil in Louisiana does not, in the absence of an actual sale thereof, produce a taxable gain in Louisiana; it is argued that there can be no taxable gain upon the oil sent outside of the State to be refined, and not sold herein.

Apparently, aside from the history of legislative treatment relating to the subject which we have previously found to be inapplicable to decision of this question, appellant chiefly relies in this contention upon its own interpretation of the provisions of LSA–R.S. 47:242 and 243, which refer to "allocable income", as contrasted with LSA–R.S. 47:244–246, which refer to "apportionable income."

The general scheme of determining net income of foreign corporations for purpos-

---

8. In the application for rehearing submitted to the trial court after its judgment therein, the taxpayer urged for apparently the first time that this regulation was discriminatory as to the petroleum industry as compared to other industrial users. This argument was not re-urged in either brief or oral argument upon appeal and is therefore considered as abandoned. Wier v. Grubb, 228 La. 254, 82 So.2d 1, syllabus 8; cf.,

Berniard v. Galiano, 224 La. 1100, 71 So.2d 857. Also, see Altman and Keesling, Allocation of Income in State Taxation (2nd ed., 1950) 103, in footnote 6 where it is indicated that regulations of the Louisiana Collector require not only the petroleum industry to use the separate accounting method, when thereby profits directly attributable to Louisiana operations may be established.

es of the State income tax return is set forth at LSA–R.S. 47:241 and 242 as follows:

"§ 241. *Net income subject to tax*

"The net income of a nonresident individual or foreign corporation subject to the tax imposed by this Chapter shall be the sum of the net allocable income earned within or derived from sources within this state, *as defined in R.S. 47:243,* and the net apportionable income derived from sources in this state, *as defined in R.S. 47:-244,* less the amount of federal income taxes attributable to the net allocable income and net apportionable income derived from sources in this state. * * *"

"§ 242. *Segregation of items of gross income*

"All items of gross income, not otherwise exempted in this Chapter, shall be segregated into two general classes as follows:

"(1) The class of gross income to be designated as 'allocable income' shall include the following:

"(a) Rents and royalties from immovable or corporeal movable property;

"(b) Profits from sales or exchanges of capital assets;

"(c) Interest income;

"(d) Dividends from corporate stock;

"(e) Royalties or similar revenue from the use of patents, trade marks, copyrights, secret processes, and other similar intangible rights;

"(f) Income from estates, trusts and partnerships;

"(g) Salaries, wages or other compensation received by a nonresident individual for personal services;

"(h) Income from construction, repair, or other similar services.

"(2) The class of income to be designated as 'apportionable income' shall include all items of gross income which are not properly includible in allocable income as defined in this Section."

■ Appellant taxpayer argues, with apparent seriousness, that the failure of Section 242 to list among the items of "allocable income" the shipment of oil out of the State prevents the Collector from utilizing the market value of such oil shipped from the State in attributing to Louisiana the value of oil production operations within our boundaries.

Such an argument overlooks the statutory scheme of determining Louisiana net income, whereby certain items obviously directly attributed to Louisiana operations are statutorily required by LSA–R.S. 47:-242(1) and 243 to be treated as "allocable

income" directly derived from Louisiana sources but whereby all other income is treated as what is statutorily denoted as "apportionable income." While the presumption might be that this "apportionable income" should be measured according to the complicated three-ratio apportionment formula set forth in LSA–R.S. 47:245 and 246, it is specifically provided by LSA–R.S. 47:244 above quoted in full that, *"in lieu"* of such apportionment, computation of "the net apportionable income derived in sources in this state by means of the separate accounting method" (see 3rd paragraph, 244) may be permitted or required under certain circumstances.

■ The trial court's opinion above quoted shows that by definition the use of the separate accounting method to determine net profits of an interstate corporation attributable to a given State utilizes the use of market value in assigning worth to products at a given stage shipped for further processing to another State; and, in fact, appellant taxpayer itself, in determining net profits of its production department operations, assigns the market value thereof to oil shipped to its refineries for further processing, in utilizing the separate accounting method with relation to its intra-company departments in order to determine costs and profits thereof for federal income tax purposes. The use of market value in the present circumstances in determining net income attributable to Louisiana by the separate accounting method must therefore be regarded as being within the legislative contemplation.

■■ Upon such finding that the Collector acted within the statutory authorization, appellant's contention that the action of the Collector constituted an improper executive usurpation of legislative power and therefore violated Article II, Sections 1 and 2, Louisiana Constitution, is found to be without merit. Likewise without merit, upon the finding that the statutory power to require separate accounting has not caused (nor was it meant to cause) to be attributed to Louisiana income other than reasonably attributable to operations within the State, are appellant's contentions that the statute interpreted so as to require separate accounting for income tax purposes offends federal constitutional prohibitions against any State depriving any person of property without due process of law or unduly burdening interstate commerce. Butler Bros. v. McColgan, 315 U.S. 501, 62 S.Ct. 701, 86 L.Ed. 991; People of State of New York ex rel. Whitney v. Graves, 299 U.S. 366, 57 S.Ct. 237, 81 L.Ed. 285; Hans Rees' Sons, Inc. v. State of North Carolina, 283 U.S. 123, 55 S.Ct. 385, 75 L.Ed. 879; Bass, Ratcliff & Gretton v. State Tax Commission, 266 U.S. 271, 45 S.Ct. 82, 69 L.Ed. 282; Underwood Typewriter Co. v. Chamberlain, 254 U.S. 113, 41 S.Ct. 45, 65 L.Ed. 165; Shaffer v. Carter, 252 U.S. 37, 40 S.Ct. 221, 64 L.Ed. 445.

The remaining constitutional contentions of appellant, that the statute denies him equal protection of the laws and that it unfairly denies him uniform and equal taxation, are adequately answered by our finding that the treatment affects uniformly any oil producer similarly situated to appellant and by our observations concerning the "manifest unfairness" of the apportionment method of determining taxpayer's net income for purposes of State taxation.

■■■ The final contention of the appellant is that the Collector has not borne the statutory burden assigned to the proponent of the use of the separate accounting method "to show that the apportionment method produces a manifestly unfair result." 6th paragraph, LSA–R.S. 47:244, above quoted in full. Somewhat similar to this contention is the complaint that the Collector did not assign any formal reasons to sustain his formal findings wherein, in requiring the taxpayer and other petroleum producers to use the separate accounting method, he found as statutorily prerequisite that "the use of the apportionment method by the taxpayer produces a manifestly unfair result and that the separate accounting method would more equitably determine the amount of net income derived from sources in Louisiana," LSA–R.S. 47:244.[9]

■■■ The term "manifestly unfair result" has an obvious meaning in the con-

text of its statutory setting. In the introductory enacting provision of our State income tax law it is provided: "Foreign corporations shall be taxed on net income from sources within the state, as hereinafter set out," LSA–R.S. 47:31(4). In the case of a foreign corporation, "the amount of the tax shall be computed only upon the net income earned within or derived from sources within the state, such net income to be computed as provided in" Sections 241–249, inclusive. Section 241 provides that the net income shall include the net allocable income and net apportionable income "derived from sources in this state", as defined by Sections 243 and 244. Section 244 provides that net apportionable income shall be determined by either applying the apportionment formula or, upon a showing "that the apportionment method produces a manifestly unfair result," by (either permissively or mandatorily) the separate accounting method.

In this context, where the statutory purpose indicated is to determine the valuation of income derived from sources within the state, the reiteration as a statutory standard in both the 3rd and 6th paragraphs of LSA–R.S. 47:244, above quoted in full, of the prerequisites "that the apportionment method produces a manifestly unfair result and that the separate accounting method * * * would more equitably

9. See letter of December 22, 1950 from Collector to the taxpayer, B–1, quoted in the trial court's opinion above excerpted.

determine the amount of net income derived from sources in Louisiana" demonstrates to us the legislative intent that the "manifestly unfair result" referred to is a manifestly inaccurate representation through the apportionment method of income derived from within Louisiana, so that the separate accounting method more equitably determines the amount of net income attributable to Louisiana operations.

This standard is applicable both to the taxpayer and to the Collector. For instance, in four instances cited in footnote 1 above, taxpayers successfully resisted application to them of a State apportionment formula upon their showing that the separate accounting method more fairly ascribed to the State in question the income properly attributable to such State; and by such arguments, properly minimized their tax liability to the states in question. See also Hans Rees' Sons, Inc. v. State of North Carolina, 283 U.S. 123, 55 S.Ct. 385, 75 L.Ed. 879. But likewise, by the plain intent of the present enactment, the Collector is also empowered to require the use of the separate accounting method to determine Louisiana "apportionable income"

for State tax purposes when the application of the apportionment formula produces a manifestly unfair result to the State, in that the figure thereby determined does not reflect the share of "apportionable income" properly attributable to Louisiana, and where the separate accounting method more equitably determines the amount of net apportionable income derived from sources in Louisiana.[10]

The Collector's finding that the statutory prerequisites are present for the use of the separate accounting method as against the apportionment formula to determine the taxpayer's net income attributable to Louisiana is adequately substantiated by the present record. By the apportionment method, the net 1950 income attributable to the taxpayer's Louisiana operations was $1,458,465.33 (on which there was a State income tax liability of $48,336.35); recomputation by the separate accounting method shows income attributable to Louisiana operations of $13,168,888.11 (upon which there was a Louisiana income tax liability of $526,734.84.) The apportionment method produces a manifestly unfair result, and the separate accounting method more equi-

10. The Collector directed the taxpayer to determine its net income for purposes of computing its net apportionable income derived from Louisiana sources by using the separate accounting method, upon making the formal findings statutorily required (see B–1). The reasons for such finding being self-evident under the statutory standard, and there being no statutory prerequisite that elaborated reasons for the findings be formally set forth, without merit appears to be appellant's complaint that no further formal written reasons were assigned to substantiate the Collector's formal determination that the statutory prerequisites existed.

tably determines the income derived from Louisiana sources, not because the tax liability is greater by the latter method, but because the separate accounting method assigns a value properly attributable to the Louisiana production operations of the taxpayer by including within the measure of the tax the value of the oil produced by such production operations, whereas the apportionment formula in computing State tax liability does not take into account the value of such operations insofar as singularly attributable to this State wherein are produced approximately thirty million of the one hundred million barrels of oil which constitute the worldwide production of the taxpayer.

A domestic producer identically situated with the appellant which sold its product at the market value would report a net income based upon the gross price or value of the oil produced, less the expenses of production. The separate accounting method requires the taxpayer to determine its net profit from Louisiana production operations on the same basis. Taxpayer's contention that the separate accounting method unfairly reflects the income attribu-table to Louisiana operations boils down to its assertion, shown above to be unfounded, that no value can be assigned to the oil produced in Louisiana which was, instead of being sold upon the open market, shipped to appellant's self-owned refinery in Texas. As the trial court stated:

"* * * The state is entitled to levy a tax on net income earned from business transactions conducted in the state. Taxpayers domiciled in the state pay on that basis. If the income earned on business operations transacted in Louisiana can be determined (and it can be in this case) the state should not be required to accept a computation based on a complicated, nebulous incomplete method the employment of which does not result in even an approximation of the accurate and true figure."

For the above and foregoing reasons, the judgment of the District Court dismissing plaintiff's suit is affirmed. Costs to be paid by plaintiff-appellant.

Affirmed.

SIMON, J., dissents.