STANDARD OIL COMPANY (INDIANA), Appellant, vs. WISCONSIN TAX COMMISSION, Respondent.

*December 7, 1928—January 8, 1929.*

For the appellant there were briefs by *Olin & Butler, Harry L. Butler,* and *Ray M. Stroud,* attorneys, all of Madison, and *C. W. Martyn* and *F. E. Packard,* both of Chicago, of counsel, and oral argument by *Mr. Butler, Mr. Stroud,* and by *William E. O'Connor* of Chicago.

For the respondent there was a brief by the *Attorney General* and *Franklin E. Bump,* assistant attorney general, and oral argument by *Mr. Bump.*

ROSENBERRY, J. The plaintiff does business within and without the state of Wisconsin. It is engaged in the business of producing, refining, transporting, and marketing petroleum products and by-products in eleven midwestern states. Its refining operations are centered in Indiana. Its property within the state of Wisconsin consists chiefly of tanks and filling stations required to supply the Wisconsin demand. The plaintiff maintains a tank farm at Green Bay and another at Superior, consisting of tanks near the lake shore, partly underground, into which oil is pumped direct from tank steamers. Fifty-four per cent. of the oil stored in these tank farms was sold within the state of Wisconsin

and forty-six per cent. without the state, mainly within the state of Minnesota. Plaintiff company did practically no manufacturing within the state of Wisconsin. In the city of Milwaukee it sold a comparatively small amount of kerosene in cans which were returned by the customer and refilled by the plaintiff company.

The assessment made by the defendant was arrived at by the following method: it was found that the tangible property located in Wisconsin amounted to $11,862,405.47 and that the entire tangible property of the appellant amounted to $192,075.938:23, from which it appears that 6.1758 per cent. of the appellant's tangible property was located in the state. of Wisconsin. It was found that the manufacturing cost within Wisconsin was $84,777.99 and that the total manufacturing cost was $129,338,389.56, making .0655 per cent. of the manufacturing cost within this state. It was found that the sales within the state of Wisconsin amounted to $21,698,622.68 and that the entire sales of the company amounted to $280,969,746.95, from which it appears that 7.722 per cent. of the sales of the company were in Wisconsin. These three percentages were added together and divided by three, producing an arithmetical average of 4.6547 per cent. This was applied to the total net income of the company less non-apportionable income, the remainder being $48,703,822, which, applying the statutory rate, resulted in a normal income tax of $134,653.40 and teachers' retirement fund surtax $22,429.73. The plaintiff sought a review of this assessment and was accorded a hearing before the tax commission, testimony was taken, and the assessment confirmed.

The controversy between the parties arises mainly as to the manner in which that part of its income properly taxable in the state of Wisconsin should be ascertained. The statute provides:

"Section 71.01, Stats. 1925. *Persons and subjects taxable*. There shall be assessed, levied, collected and paid a

tax on all income received in each calendar year . . . by every nonresident of the state upon such income as is derived from property located or business transacted within the state, except as hereinafter exempted," etc.

"Section 71.02. *Definition of terms; what income taxable*. . . .

"(3) (c) Income from mercantile or manufacturing business, rentals, royalties or the operation of any farm, mine or quarry, or from the sale of real or personal property for the purposes of taxation shall follow the situs of the property or business from which derived," etc.

"(3) (d) Persons engaged in business within and without the state shall be taxed only on such income as is derived from business transacted and property located within the state. The amount of such income apportionable to Wisconsin may be determined by an allocation and separate accounting thereof, when, in the judgment of the tax commission, that method will reasonably reflect the income properly assignable to this state, but otherwise in the following manner: There shall first be deducted from the total net income of the taxpayer such part thereof (less related expenses, if any) as follows the situs of the property or the residence of the recipient; provided, that in the case of income which follows the residence of the recipient, the amount of interest and dividends deductible under this provision shall be limited to the total interest and dividends received which are in excess of the total interest paid and allowable as a deduction under section 71.03 (2) during the income year. The remaining net income shall be apportioned to Wisconsin on the basis of the ratio obtained by taking the arithmetical average of the following three ratios:

"1. The ratio of the tangible property, real, personal, and mixed, owned and used by the taxpayer in Wisconsin in connection with his trade or business during the income year to the total of such property of the taxpayer owned and used by him in connection with his trade or business everywhere. . . .

"2. In the case of persons engaged in manufacturing or in any form of collecting, assembling, or processing goods and materials within this state, the ratio of the total cost of manufacturing, collecting, assembling, or processing within this state to the total cost of manufacturing, assembling, or processing everywhere. . . .

"3. In the case of trading, mercantile, or manufacturing concerns the ratio of the total sales made through or by offices, agencies, or branches located in Wisconsin during the income year to the total net sales made everywhere during said income year."

There are other provisions of the statute relating to the allocation of income in accordance with the ratio method which it is not necessary to set out here.

In prescribing these methods of allocating income of persons doing business within and without the state, it is apparent that it was the legislative intent that the method prescribed should be so applied as to subject the income earned within the state to taxation and no more, the legislature quite evidently having in mind that it had no jurisdiction to tax income earned in other states. *U. S. Glue Co. v. Oak Creek,* 161 Wis. 211, 153 N. W. 241.

The plaintiff contends that its income should be ascertained by the allocation and separate accounting method by which the Wisconsin business is charged at the market price with all products received by it, with the expense of transacting the business, including a proper allocation of general or overhead expenses and office accounting; there should be credited to Wisconsin the gross amount received from sales of goods within the state, and that the difference constitutes the taxable income of the plaintiff company. Applying this method to the plaintiff's business, it appears that the income on business transacted within the state of Wisconsin for the year 1925 (the year in question) was $1,273,413, against which there was properly assessable a tax, including normal and teachers' state retirement fund, of $88,939.79. Under the statute the plaintiff paid the total amount of taxes assessed and brought this action to require the refund to plaintiff of the sum of $68,143.34, with interest thereon from and after January 4, 1927, the date of payment.

It is not claimed on behalf of the defendant that if the separate accounting method is to be applied to the plaintiff's

income a proper accounting upon that basis has not been made. The commission, however, found: "That such method and such return do not reflect the entire net taxable income from business transacted and property located within this state," and on the basis of that finding determined to apply the ratio method.

We have given very careful attention to the opinion of the defendant commission and the argument made in support of it by the attorney general. The parts material here are set out in the margin.[1]

[1] "In fact such method of separate accounting would lead to the exclusion of income and deductions resulting from business activities, and property located within Wisconsin. The separate accounting basis used by the company is not strictly a separate accounting of income earned in Wisconsin. With the exception of a small amount of rental income the appellant's basis for determining gross income depends entirely on sales to points located in Wisconsin. The appellant's vessels deliver to Wisconsin ports and no profit on such service is reported to this state. The appellant derives profits from the accumulation and subsequent disposition of large quantities of Wisconsin tank farm gasoline and refined oil. The volume of production at the refinery can be more uniform and manufacturing costs correspondingly lower because of these facilities, and they permit the ironing out of some of the seasonal fluctuations in demand for products in the territory supplied. These facilities are quite a business and as the testimony shows are necessary in the production of income of the Standard Oil Company, but the appellant's original return does not reflect a cent of profit from any of this tank farm oil which is sold to points outside the state.

"There is no reason why this company should be allowed to regulate its taxable income by modifying its income and deductions to fit a business condition which does not exist in this company. The appellant's basis of reporting appears to be predicated on the theory that its income and deductions should correspond relatively with taxpayers in the same line of business regardless of whether they operate in the same manner. The appellant's business activities in Wisconsin are more extensive than the activities of their competitors. The appellant refines its own product outside the state. It also maintains large tank farms in Wisconsin and supplies lake stations by its own vessels. The manufacturing profit of the appellant must depend to a large extent on the volume produced, and a large or steady production has a tendency to decrease costs and increase manufacturing profits. Purchasing crude oil for manufacturing purposes is not the same as purchasing finished gasoline, refined oil, lubricating oils, grease, and other by-products. The purchase of crude oil for production makes necessary the sale of finished prod-

The real basis of defendant's argument seems to be that because the plaintiff company sells a large amount of its products in Wisconsin, its manufacturing profits in other

uct which might not have been acquired but for the fact that the refineries had to continue operations. The cost of sales, then, cannot be determined solely by the market quotations but upon actual cost of producing the product. Production must be disposed of through sales and has its effect on profits from sales. This relationship between the appellant's income from manufacturing, selling, and other activities cannot be ignored. It is practically impossible to segregate the income of one from the income of the business as a whole. It exists. The operations of most of the appellant's competitors in Wisconsin are confined exclusively to that of selling. The appellant does business, and has facilities and property within this state, which materially assist the operations of the appellant in other states, and affect the profits from such operations. A competitor having no refinery of its own does not have the problem of assigning profits to manufacturing activities. These competitors' costs consist of definite purchases of finished product, which costs need not be based on assigned values; and expenses need not be allocated to manufacturing and selling activities on a 50 %–50 % basis. To a certain extent, the appellant's method of reporting has the effect of allowing deductions of amounts not actually incurred, the appellant's assumption being that costs and deductions of companies in the same line, but not operating in the same manner in this state, are comparable in every way with the costs of the appellant company for products sold in Wisconsin. No business is so like that of the appellant that the costs of such business can be used to measure the appellant's costs better than they can be measured by the actual costs of the appellant.

"The appellant's method of accounting does not clearly separate the Wisconsin business and income from the entire business and income of the company. The crude oil is refined by the appellant's refineries and the resultant gasoline, refined oil, and by-products are billed to the sales department at assigned billing prices. Each department of the company which has a part in the making or handling of the product charges a profit, which profit is treated as a cost to the next department receiving the product. Thus, the departmental books of the appellant show estimated fictitious profits on product not yet sold. It is easy to see that this method of accounting cannot be used for all purposes, and especially not for income-tax purposes.

"A person realizes a profit or loss on the sale of product when such product is disposed of. To anticipate departmental profits in advance of sale of the product by taking a manufacturing profit, a transportation profit, or a selling profit at different stages and times, is arbitrary. The dependence of profits of the appellant's sales department on activities in other departments of the company has been

states are increased by reason of the continuity of its operations and increased volume of business resulting from sales made in Wisconsin; and for that reason some of the profits derived from operations carried on without the state are at-

referred to above. Similarly, each sales branch within the sales department is affected to a certain extent by the activities of other sales branches. The particular sales branches that operate both within and without Wisconsin derive their income from both within and without the state. The method of accounting for the sales branch profits of the appellant does not and cannot determine the exact profits earned within Wisconsin by such branches. In order to determine the profits which such branches earned in Wisconsin, the appellant has apportioned costs, expenses, etc., in proportion to sales made within and without the state. The 'costs' which are thus apportioned are based on prices at which the refineries billed such product to the sales department.

"The record in this appeal is silent as to just what, if any, of the appellant's outside income has been subjected to the tax by the statutory formula of apportionment. It is true that the appellant alleges that the use of property outside of Wisconsin, the use of manufacturing activities outside of Wisconsin, and the use of sales to consumers outside of Wisconsin in the apportionment fraction, have the effect of taxing income earned without the state's jurisdiction. But a careful analysis of the apportionment fraction and the statute under which this fraction was computed clearly indicates that the appellant's property, manufacturing and sales figures outside of Wisconsin appear only in the denominator of the fraction; and their use in the denominator actually excludes income from assessment, rather than includes income not subject to assessment. The statute attempts only to reach income assignable to Wisconsin activities. This is its purpose, and the record discloses no outside income that has been subjected to the tax by reason of the use of the statutory formula of apportionment; and the record indicates that the appellant's method does not account for all of its Wisconsin income.

"The appellant contends that its business activities are severable, and that its business activities within Wisconsin have little, if any, inter-relationship with its business activities in other states. Assuming that this might be true, the fact that its business activities in Wisconsin might be severable from its business activities in other states has no bearing on the question of the proper method of accounting to be used to reflect those business activities in Wisconsin, and the income resulting therefrom. Even though its business activities in this state were ever so separate and distinct from its other business activities in other states, a faulty method of accounting for the income arising from those business activities within Wisconsin cannot be accepted simply because the business activities themselves might be capable of separation."

tributable to intrastate operations and so constitute income earned within the state and therefore taxable as Wisconsin income.

In the enactment of the statute relating to the allocation of income of persons doing business within and without the state, the declared legislative purpose is to make a reasonable and equitable distribution of the taxpayer's income, to the end that that part of the income justly assessable in the state of Wisconsin may be ascertained. The statute does not enjoin upon the commission the use of that method which will produce the largest amount of taxable income, but rather that method which will most justly apportion the income properly taxable in Wisconsin. Here it appears conclusively that it is possible to ascertain the income derived from business transactions in Wisconsin by the application of proper accounting methods. It appears without dispute that the tax commission has had full access to all the records of the plaintiff company and has been given every opportunity to confirm the correctness of the statements submitted to it by the plaintiff.

We regard as unsound the argument submitted to sustain the commission's position in this case. If the manufacturing profits of the plaintiff company are increased by means of sales operations in the state of Wisconsin, the converse is true that the sales operations in Wisconsin benefit by the manufacturing operations of the plaintiff corporation in other states. The argument cannot be applied one way and not the other. If it should appear that the manufacturing operations were conducted at a loss in other states, would it be claimed that some part of that loss might properly be charged to sales operations in the state of Wisconsin to diminish the Wisconsin income? We think not. There are some operations which from their very nature produce an income which cannot be properly allocated by separate ac-

counting methods, instances of which are the telegraph, telephone, and express companies. They stand ready to serve whoever may apply for service, and the entire operation constitutes a unit of service. That is not the case with the manufacturing and sales business, particularly so where the accounts are so kept as to be readily separable.

Nor do we find anything in *Underwood Typewriter Co. v. Chamberlain,* 254 U. S. 113, 41 Sup. Ct. 45, inconsistent with our conclusion in this case. There, there was no separation on the basis of market value between the operations of the manufacturing department and the sales department as there is in this case. We perceive no reason why, under the facts in this case, the profits derived from the sales operations should not be ascertained, so far as plaintiff is concerned, as they would be if the sales operations were conducted by a separate corporate entity. In either case the profits are earned at the same time and place.

Our conclusions in this case are supported by the decision in *Standard Oil Co. v. Thoresen,* 29 Fed. (2d) 708, decided by the United States circuit court of appeals for the Eighth circuit at the September 1928 term, in which we concur.

*By the Court.*—Judgment appealed from is reversed, and cause remanded with directions to enter judgment in favor of the plaintiff in accordance with this opinion.