MAGNOLIA PETROLEUM CO. v. OKLAHOMA TAX COMMISSION et al.

No. 30180.   Dec. 16, 1941.

Rehearing Denied Feb. 10, 1942.

*121 P. 2d 1008.*

Walace Hawkins and Earl A. Brown, both of Dallas, Tex., and W. R. Wallace and B. B. Blakeney, Jr., both of Oklahoma City, for plaintiff in error.

F. M. Dudley, A. L. Herr, C. D. Stinchecum, and A. D. Howell, all of Oklahoma City, for defendants in error.

GIBSON, J.   This is an appeal by the Magnolia Petroleum Company from an order of the Oklahoma Tax Commission assessing an additional income tax against it for the years 1935 to 1938, inclusive.

The taxpayer is a foreign corporation, licensed in this state, with its principal offices at Dallas, Tex. Its business con-

sists of producing and refining crude oil and the sale of its crude and refined products. While it produces crude oil and markets its refined products in this state, it has no refineries, and markets little or none of its crude oil here. Its business extends over this and other states.

For the years in question the taxpayer, on the assumption that its gross income in Oklahoma was reasonably discernible and subject to segregation from its income elsewhere, made its returns to the commission pursuant to the provisions of the statute authorizing direct allocation for purposes of taxation in cases of this general character. Section 8, H. B. 192, S. L. 1935; 68 Okla. Stat. Ann. §878 (amended 1939, 1941).

But the commission was of the opinion that the particular income here considered was not reasonably subject to the method of direct allocation as provided by law, but was ascertainable only by a process of apportionment between this and other states by a formula not specifically defined by statute but by the one adopted here pursuant to the discretionary power of the commission as conferred by the statute, supra, paragraph (g) section 8. That portion of the Act of 1935 material to the issues reads as follows:

"(d) In the case of nonresident individuals whose gross income is from sources in part within and in part without the state, and corporations the gross income of which is derived from property located and business transacted in part within and in part without this state, direct allocation of such income may be made where practicable from the books of account and records of the taxpayer, together with the deductions applicable thereto where such methods substantially reflect the net income, and returns made on such basis shall be accepted in computing the tax.

"(e) In any case where the nature of the business is such as to render direct allocation impracticable, or where the books of account and records do not substantially reflect the net income subject to the tax, allocation shall be made as follows:

"(1) Interest, dividends, rents, royalties and other similar items of gross revenue, less related expenses, shall be allocated to this state if received in connection with business transacted and/or property located within this state.

"(2) Gains or losses on the sale of capital assets located within this state except those held for sale in the regular course of business, shall be allocated to this state.

"(3) The remainder of the income not allocable under (1) and (2) shall be allocated by taking the arithmetical average of the following factors: (1) The ratio of the average accumulated investment at the beginning and close of the taxable year of the total real and tangible personal property owned and used in connection with the business carried on within this state to the average of the accumulated investment at the beginning and close of the taxable year of the total real and tangible personal property owned and used in connection with the business carried on everywhere; (2) The ratio of the total cost of manufacturing (including collecting, assembling, processing, or operating) or selling, depending upon the particular type of business, properly attributable to the business carried on within this state during the taxable year, to the total of such costs in connection with business carried on everywhere during the taxable year. The provisions of this subsection shall be interpreted in accordance with the accepted accounting practice in the trade or business; (3) The ratio of the gross sales or gross revenue in connection with the business carried on within this state during the taxable year, excluding, however, any income received from the sale of capital assets and other property not sold in the regular course of business, and also excluding income from interest, dividends, rents and royalties separately allocated as above provided, to the gross sales or gross revenue from business carried on everywhere during the taxable year. . . .

"(g) Allocation in special cases: (1) In any case where the method of allocation as prescribed in subdivisions (d), (e) and (f) of this section, are impracticable or inequitable or which, in the judgment of the commission, does not accurately reflect the true amount of

the taxpayer's income or in case the taxes mentioned in subdivisions (d), (e) and (f) of this section cannot be ascertained from the taxpayer's records or do not apply to any appreciable extent to the business, then the taxpayer shall determine, subject to the approval of the commission, the net taxable income allocable to this state by such method as will equitably allocate to this state a just portion of the total net income. If in the judgment of the commission such method does not clearly reflect the income justly allocable to this state, said commission may prescribe methods, rules and regulations for properly determining the income taxable under this act. But in no case shall the income computed as prescribed by the Tax Commission exceed the income which would be allocable to this state if computed in accordance with the provision of subdivisions (e) and (f) of this section."

The Act of 1937 contains substantially the same provisions.

In addition to the above facts, it is stipulated that the taxpayer, for the purpose of maintaining a proper and convenient record and bookkeeping system for its entire business, has divided the same into a number of departments designated as producing; crude purchase and storage; refining; marketing; traffic, Magnolia building and general ledger.

The present controversy involves particularly the income credited to the crude purchasing and storage department as reflected by the records thereof for the years in question. This department was neither a purchasing nor a selling agency for the taxpayer corporation, but constituted merely a system of bookkeeping and accounting maintained by the taxpayer in connection with its production and purchase and sale of crude oil. All oil acquired by the corporation, whether by purchase or by production, was listed in this department at the cost thereof or at the standard market price, as the case may be, at the time received.

From these transactions there was reflected for each of the years in question a net income which the taxpayer did not return to the commission for taxation. This income, with another item hereafter mentioned, is the subject of the additional assessment in this case.

Only a portion of the oil as shown by the books aforesaid was produced in Oklahoma. The commission, proceeding on the assumption that the gross income derived from the oil produced here could not be readily ascertained by the method of direct allocation as aforesaid, undertook to allocate to this state its proportionate part thereof by a system of indirect allocation not specifically defined by statute but allegedly within the discretionary powers of the commission as aforesaid by authority of paragraph (g), supra, on the theory that the other designated methods were impracticable or inequitable.

The commission says that of all the departments above mentioned the corporation taxpayer has only allocated to this state for income tax purposes the profit from the producing and the marketing departments; that it has allocated to the state no part of the income earned by the crude purchase and storage department.

It is contended in this respect that the taxpayer through the latter department received quantities of oil produced in this state by means of its local property and facilities; that said oil was shipped to Texas and there charged at its market value on the books of said department, and later disposed of, along with oil from other states, resulting in the net income here assessed. It is admitted that the department made no sales in Oklahoma.

The commission now attempts to single out the crude purchase and storage department and, for income tax purposes, to allocate to the state by means of percentage or ratio formula the gross revenues derived from the oil produced here as the state's portion of the corporation's gross income "which is derived from property located and business transacted in part within and in part without this state." Paragraphs (d) and (g), sec. 8, supra.

It is true that the corporation made no return of the gross revenues received from the sale of crude oil subsequent to its shipment out of the state into Texas. But, in its annual returns, it accounted for certain gross revenue derived from the oil produced in this state. This gross revenue represented the prevailing market price of oil at the time of its shipment into Texas. The net income was the difference between the cost of production through local facilities and the market price. Therefore, the gross revenue derived from all the oil produced in Oklahoma has, at least in a measure, been accounted for and the tax paid on the net income therefrom.

The latter transactions, of course, did not constitute sales nor result in a gross profit to the corporation. They were merely transfers by the corporation from its production department operating in Oklahoma to its crude purchase and storage department operating wholly without the state where a record thereof was kept, along with other oil, and the prevailing market price indicated. There were no refineries in Oklahoma, and no sales made here until after the oil was refined, whereupon a portion of the products was brought here and sold.

The commission takes the position that the income reflected by the books of the crude purchase and storage department was "derived from property located and business transacted in part within and in part without this state," as defined in the statute, and that the gross profit thereon for income tax purposes was not subject to direct allocation by any practicable method, but the resort to indirect methods was the only practicable solution whereby Oklahoma could properly tax its portion of the net income derived from all oil received by the department in question.

On the other hand, the taxpayer insists that its gross profit from the oil produced here, and the expense connected with its production and sale, were easily ascertainable by a practicable direct method of allocation, and that the net income therefrom had been so

ascertained, and had been reported to the commission and paid.

In our opinion, the intention as expressed in the statute is that direct allocation be made in all cases of this character where practicable, and that indirect allocation be made only in those instances where the same would prove more practicable than direct allocation. The statute clearly favors direct allocation. The purpose in such case can be only to tax profits actually made in this state. To extend the operation of the statute beyond that point and tax profits arising beyond the jurisdiction of the state would violate the due process clause of the Federal Constitution. Therefore, direct allocation is entitled to first consideration. Where direct allocation can be employed, all suspicion of unconstitutional taxation is dispelled.

The above is in accord with the decisions of other courts. In cases where the books of account and records of the taxpayer substantially reflect the net income derived from the business transacted and property located within the state, the income tax assessment must be limited thereto. Standard Oil Company of Indiana v. Wisconsin Tax Commission, 197 Wis. 630, 223 N. W. 85; Fisher v. Standard Oil Co., 12 Fed. 2d 744. If the business of the taxpayer transacted within the state is separable from its other business, no allocation is necessary. The rule is stated in the last-cited case as follows:

"Theories of allocation have no place in determining income tax on corporation, if net income within state can be distinguished from outside business."

By a system of indirect allocation the income of a corporation operating as a unit in interstate commerce may be apportioned for tax purposes among the states contributing to the facilities and transactions from which the income arose. Underwood Typewriter Co. v. Chamberlain, 254 U. S. 113, 65 L. Ed. 165. This may be done by a percentage or ratio method as defined in our statute. But such allocation must be based on the business as a whole. The commission may not single out a particular

department, as was done in this case, and apply thereto the indirect method of apportionment for income tax purposes. Such procedure would not reasonably reflect this state's contribution to the entire profits of the corporation. Without proper consideration of other departments and the property, transactions, and income connected therewith, indirect allocation would be wholly impracticable. We are aware of no decisions approving such an allocation.

Before a system of indirect allocation may be adopted, the commission must be faced with the impossibility of allocating specifically the profits earned by the processes and facilities operating within the state.

The commission places much reliance on the Underwood Case, above. There the court approved as not in conflict with the Constitution a system of indirect allocation similar to that defined in our statute in the case of a manufacuring and selling corporation operating in a number of states. The taxpayer offered no method of direct allocation, but insisted that the statute was unconstitutional as a violation of the commerce and due process clauses of the Federal Constitution. In speaking of the statute, the court said:

"The Legislature, in attempting to put upon this business its fair share of the burden of taxation, was faced with the impossibility of allocating specifically the profits earned by the processes conducted within its borders. It therefore adopted a method of apportionment which, for all that appears in this record, reached, and was meant to reach, only the profits earned within the state."

We gather from that and many other cases that where a practicable system of direct allocation is impossible, the state may then, and not until then, adopt and apply a method of indirect allocation founded upon the entire business operations of the taxpayer.

The principal question here is whether the taxpayer has adopted a practicable method in segregating its profits derived from its local property and business, and has made a proper return of its net income in the circumstances.

We are of the opinion that the taxpayer has made return in the most practicable manner to be devised.

After the oil was produced in Oklahoma, shipment thereof was made to points outside the state. At the date of shipment there existed a standard price or fixed value for such oil. The cost of production was reflected by the corporation's books, and the present net profit thereby made clear. As we have said, there was no actual sale of the oil, but the transaction constituted the initial step toward final disposition at some indefinite time in the future, and in some foreign jurisdiction, and clearly reflected the financial gain or loss at the time the oil left the state.

By reason of the constitutional inhibition against the taxation of income derived from transactions outside the state, an allocation by indirect methods must reasonably reflect the net income actually attributable to the state. See Wood Preserving Corp. v. Department of Treasury of Indiana, 114 Fed. 2d 922 (C.C.A.). The ratio or percentage method often involves intricate and tedious processes of accounting, and the taxpayer is confronted with barriers almost insurmountable in his effort to make a return that will truly reflect the net income which each state may tax and which will not run counter to the due process and commerce clauses of the Constitution of the United States.

The taxpayer must assume and bear the burden of taxation, but the statutes authorizing the tax, where at all uncertain as to the elements comprising his duty, will be construed in his favor thus to relieve him of all uncertain burdens. Campbell v. Cornish, 163 Okla. 213, 22 P. 2d 63. He is still permitted to make his own income tax return, and, if in doing so, he has complied with the law under a fair and reasonable interpretation thereof, his duty in this regard has been performed.

When this oil left the state it had a definite cash value which, if then sold,

would have represented the gross revenue subject to allocation for tax purposes in the state. The taxpayer, instead of marketing the oil, elected to retain the same, and, for purposes of local income taxes, charged itself with the market value thereof. Beyond that point the oil became intermingled with oil from other states, and was either stored or refined, and later sold. Its withholding became a matter of pure speculation on the part of the taxpayer, and no actual profit for income taxation could accrue until it was disposed of.

In such case the taxpayer may, and often does, retain possession for years, and the income tax on the oil could be accordingly delayed, and the prospect of accurate allocation by indirect methods rendered less and less practicable by the passing of time.

While the foregoing circumstances may not in themselves prevent the collection of a tax when a profit is eventually realized, they will operate strongly against indirect allocation, and will just as strongly favor direct allocation immediately if the same can be based on a reasonably sound formula.

The situation of the taxpayer in the instant case is fairly analogous to that of a foreign corporation which maintains both wholesale and retail departments, the wholesale department supplying the retail department with merchandise for sale under an arrangement in the nature of sales at prevailing wholesale prices. In such case the taxpayer's gross profits constitute the receipts from the quasi sales consummated in the taxing state, as reflected by its books of account. This would at least place the company on an equality with others producing and marketing wholly within the state.

Here, the producing department of the corporation in Oklahoma was the department to which the gross revenues in question were attributable, not to the crude purchase and storage department as alleged by the commission. The latter operated wholly outside the state, and, for income tax purposes, the profits reflected by its records were, under the particular circumstances, wholly disconnected with the operations in Oklahoma and the revenues accruing in this state. When the producing department transferred the oil to the Texas department, the prevailing market price was the only gross profit actually attributable to Oklahoma. The producing department is reasonably similar to the ordinary wholesale department, and the crude purchase and storage department similar to the retail or jobbing department of the same business.

In Fisher v. Standard Oil Co., supra, the court had under consideration a situation very similar to this case. There the state of North Dakota sought to levy an income tax on a foreign corporation by indirect allocation of its gross profits. The only difference between the circumstances there and here is that the foreign corporation produced no oil in the state of North Dakota, but shipped products from out of the state to its retail agency in the state at the prevailing wholesale prices, while here the department which we have likened to a wholesale division shipped its products out of the state to its retail agencies at the prevailing market price. The court in that case held that the wholesale price was the proper basis for determining the income tax in North Dakota; that the difference between that price and the price received in North Dakota represented the gross income in that state. In the body of the opinion the court said:

"Theories of allocation can have no place in the inquiry, if net income within the state stands on its own footing unmixed with outside business. Wallace v. Hines, 253 U. S. 66, 40 S. Ct. 435, 64 L. Ed. 782. We think it cannot be doubted that the products as brought into the state had an easily ascertainable wholesale market price. We think appellee's business within the state is easily separable from its other business by charging it with the wholesale price of products which it sells in North Dakota. That would put it on an equality there with those who sell and do not produce and refine."

Here the oil produced in the state had an easily ascertainable market price

that would represent the value of the product attributable wholly to Oklahoma. If the taxpayer preferred to separate its Oklahoma business in this manner from its business in other states, it was entitled to that privilege under the law, since the method adopted was reasonable and practicable.

To the same general effect, see Standard Oil Co. v. Wisconsin Tax Commission, supra; Montgomery Ward & Co. v. State Tax Commission, 151 Kan. 159, 98 P. 2d 143.

The statute, above, does not authorize the commission to assess by a system of indirect allocation an income tax against a foreign corporation engaged in business here and elsewhere, unless the method employed takes into consideration the property of the corporation and all its transactions contributing to the income sought to be taxed, located, and consummated here and elswhere. This statement finds support in the Fisher Case above.

The other item of contention heretofore mentioned consisted of certain cash discounts taken by the taxpayer as a consideration for prompt payment of invoices of materials and supplies used in the operation of its business in Oklahoma.

It has been stipulated that if these discounts are taxable as income, the method of allocation employed by the commission is not questioned by the taxpayer.

The taxpayer says concerning these discounts: "The issue is whether they are financial gains or reductions in cost of material. If they are financial gains, they are allocable outside of Oklahoma; if reductions in cost, they are allocable to Oklahoma." The taxpayer has always treated them as financial gains attributable to its transactions outside this state.

The discounts, amounting to no more than 2 per cent in any case, were all taken on purchases made at the Dallas office. As each invoice was paid, the company entered the amount of the discount in its general ledger department as an immediate financial gain or profit. When materials so purchased were delivered to the Oklahoma division they were charged at invoice price. The commission insists that the amount of these discounts should have been deducted from the cost price of the materials used in this state, thus to increase accordingly the gross profit earned in this state.

We agree with the taxpayer that if the discounts were to be considered as financial gains and not as reductions in cost, they were gains attributable wholly to the Dallas office and had no relation to the property or business transactions of the company in this state, and were therefore not subject to allocation here.

The uncontradicted evidence shows that cash discounts of 2 per cent or less are considered and treated by competent accountants as income and not as reductions in the cost of material in instances of this character. In view of this evidence, the statute itself settles the issue. In that portion of section 878, Title 68, Okla. Stat. Ann., supra, pertaining to allocation of gross income, it is provided as follows:

"The provisions of this subsection shall be interpreted in accordance with the accepted accounting practice in the trade or business."

The accepted accounting practices are to treat these discounts as financial gain where they amount to 2 per cent or less. The treatment may be somewhat fictitious, but it has been accepted as the better way to handle such items. And we can find no fault therewith.

As authority upholding its contention that the discounts are nothing more than reduction in cost, the commission cites Commissioner of Internal Revenue v. Bullock's, 81 Fed. 2d (9 C.C.A.) 1002. There it was held that discounts should be treated as reduction in cost, but the discounts amounted to 4 per cent or more. And, further, there was no statute like our own involved in that case. Therefore, the decision is of no aid here.

We hold that the discounts in question were not taxable as income in Oklahoma.

It is unnecessary to consider the other assignments presented by the taxpayer.

The order of the Tax Commission is vacated, and the proceedings remanded, with directions to cancel the proposed assessments.

WELCH, C. J., CORN, V. C. J., and OSBORN, BAYLESS, HURST, and DAVISON, JJ., concur. RILEY and ARNOLD, JJ., absent.