414 P.2d 579

**WESTERN CONTRACTING CORPORA-
TION, a corporation, Plaintiff,**

v.

**STATE TAX COMMISSION, Defendant.**

No. 10322.

Supreme Court of Utah.

May 17, 1966.

---

Fabian & Clendenin, Kenneth J. Hanni, Bryce E. Roe, Sanford M. Stoddard, Salt Lake City, for plaintiff.

Phil L. Hansen, Atty. Gen., F. Burton Howard, Sp. Asst. Atty. Gen., Salt Lake City, for defendant.

CALLISTER, Justice.

Review of a decision of the State Tax Commission imposing a corporation franchise tax deficiency assessment upon the plaintiff in the sum of $32,913.59.

Plaintiff is an Iowa corporation, qualified to do business in the State of Utah, engaged in the general construction business. In 1958, it entered into a contract with Kennecott Copper Corporation to perform certain stripping operations within this state.

During the calendar year 1962, plaintiff was also engaged in several projects in other states. On several of these projects it suffered rather heavy losses. Excluding the Kennecott project, its total project revenue was $23,104,804.53 and its total project cost $24,806,696.86—resulting in a net loss of $1,702,892.33.

Plaintiff's gross revenue from its Utah operation during the same year was $6,144,875.00. It was stipulated that on a segregated accounting basis, after deducting applicable expenses, the net profit before federal taxes to be allocated to the Utah project was the sum of $1,741,237.43. Offsetting this last figure against its losses, plaintiff's total net income, before federal taxes, for 1962 was $555,088.31. After deducting investment credit of $86,071.71, it paid federal income taxes in the amount of $183,215.11 resulting in a total net income of $371,873.20.

In its 1962 franchise tax return to the State of Utah plaintiff, using a segregated accounting method as it had in previous years, reported a Utah income of $1,741,237.43 and deducted therefrom the amount

of $905,443.46 for federal taxes which would have been due had it been doing business in Utah alone. This last deduction was disallowed by the Commission which took the position that the deduction must be computed by allocating to Utah only its proportionate burden of the federal taxes actually paid—$183,215.11.

In its order, the Tax Commission concluded as a matter of law that plaintiff was not a unitary business and that its Utah income was separable from its foreign income and subject to taxation in its entirety. It further held that the statutory formula provided by Section 59–13–20, U.C.A.1953, did not allocate or tax the portion of plaintiff's net income reasonably attributable to business done within this state, but that the segregated method of accounting did accomplish a fair allocation. However, in regard to the proper deduction for federal income taxes, the Commission determined that the taxes actually paid must be apportioned and that such taxes cannot be assigned to loss operations nor can deductions attributable to loss operations in another state be allocated to profit operations in the State of Utah.

In seeking to set aside the Commission's order, plaintiff contends that, (1) its Utah income should be taxed pursuant to the statutory formula rather than by a segregated accounting method or, in the alternative, if the latter method be deemed applicable, (2) it cannot be taxed on any amount which exceeds its total net income and, further, (3) that if the allocated net income to Utah can exceed its total net income, then a deduction for federal income taxes on an "equivalent" basis must be allowed.

The pertinent provisions of Section 59–13–20, U.C.A. provide:

"The portion of net income assignable to business done within this state, and which shall be the basis and measure of the tax imposed by this chapter, may be determined by an allocation upon the basis of the following rules * * *

(5) If the bank or other corporation carries on no business outside this state, the whole of the remainder of net income may be allocated to this state.

(6) If the bank or other corporation carries on any business outside this state, the said remainder may be divided into three equal parts:

(a) Of one third, such portion shall be attributed to business carried on within this state as shall be found by multiplying said third by a fraction whose numerator is the value of the corporation's tangible property situated within this state and whose denominator is the value of all the corporation's tangible property wherever situated.

(b) Of another third, such portion shall be attributed to business carried on within this state as shall be found by

multiplying said third by a fraction whose numerator is the total amount expended by the corporation for wages, salaries, commissions or other compensation to its employees and assignable to this state and whose denominator is the total expenditures of the corporation for wages, salaries, commissions or other compensation to all of its employees.

(c) Of the remaining third, such portion shall be attributed to business carried on within this state as shall be found by multiplying said third by a fraction whose numerator is the amount of the corporation's gross receipts from business assignable to this state, and whose denominator is the amount of the corporation's gross receipts from all its business. * * *

* * * * * *

(8) If in the judgment of the tax commission the application of the foregoing rules does not allocate to this state the proportion of net income fairly and equitably attributable to this state, it may with such information as it may be able to obtain make such allocation as is fairly calculated to assign to this state the portion of net income reasonably attributable to the business done within this state and to avoid subjecting the taxpayer to double taxation."

Prior to the time of the controversy here involved, the Commission had promulgated a regulation, known as Regulation 8(4), wherein it determined that the statutory formula was not equitably applicable to mining companies, contractors, ranch and farm corporations and, therefore, a segregated accounting method was "generally required" with regard to these businesses.

■ Subsection (6) of the above quoted statute does not purport to tax directly a corporation doing business both within and without the state on the net income which may be credited by a system accounting to business done within the state. Rather, it seeks to tax a percentage of the entire net income, wherever it may be earned, by a formula of apportionment composed of three distinct ratios and to attribute this portion to business carried on within this state. Justice Wolfe observed in California Packing Co. v. State Tax Commission:[1]

"Hence, the net income is always to be found, not for a direct tax on it but to furnish the measure for the imposition of a franchise tax."

The statutes of several states favor the separate accounting method over a formula allocation.[2] Our statute is just the reverse. It clearly expresses a preference for the

[1]. 97 Utah 307, 383, 83 P.2d 463, 470 (1939).

[2]. E. g., Magnolia Petroleum Co. v. Oklahoma Tax Commission, 190 Okl. 172, 121 P.2d 1008 (1941) and McWilliams Dredging Co. v. McKeigney, 227 Miss. 730, 86 So.2d 672, appl. dism. 352 U.S. 807, 77 S.Ct. 57, 1 L.Ed.2d 38 (1956).

statutory formula.[3] Our legislature has created a presumption that the statutory formula provided in subsection (6) will allocate the proportion of net income fairly and equitably attributable to this state. However, by reason of the federal constitutional prohibition of taxation by a state of extra-territorial income derived by a corporation from business conducted beyond its boundaries, the legislature wisely enacted subdivision (8) which grants authority to the Tax Commission to modify or disregard the statutory formula if it *"does not"* allocate to the state the proportion of net income fairly and equitably attributable to this state.

■ There appear to be two limitations on the use of an apportionment formula.[4] First, it cannot be used to tax extra-territorial income that is not connected by unity of use with the business being taxed.[5] Second, the unitary character of a business will not justify a tax, imposed under a formula, which is grossly disproportionate to the business actually done in the taxing state.[6]

In Butler Bros. v. McColgan [7] the issue, as in the instant case, was whether the corporate taxpayer must use a statutory allocation-formula or separate accounting to determine its taxable net income in the State of California.[8] The Supreme Court of California held that the nature of the business conducted within and without the state determined whether the allocation formula or separate accounting should be used to report the net income in the state. The court stated:

" * * * It is only if its business within this state is truly separate and distinct from its business without this state, so that segregation of income may be made clearly and accurately, that the separate accounting method may properly be used. * * *

"If there is any evidence to sustain a finding that the operations of appellant in California during the year 1935 contributed to the net income derived from its entire operations in the United States, then the entire business of appellant is so clearly unitary as to require a fair

3. Defendant's Regulation 8(4) contains the following statement: "It is the policy of the Tax Commission, based upon court interpretation of the statute, to require that the method set forth in the statute be used for the assignment of net income within and without this state."
4. Rottschaefer, State Jurisdiction of Income, 44 Harvard Law Rev. 1075.
5. Standard Oil Co., Indiana v. Thoreson, 29 F.2d 708 (C.C.A.8th, 1929).
6. Hans Rees' Sons v. State of North Carolina ex rel. Maxwell, 283 U.S. 123, 51 S.Ct. 385, 75 L.Ed. 879 (1931).
7. 17 Cal.2d 664, 111 P.2d 334 (1941).
8. The California statute then in effect, Sec. 10 of the Bank and Corporation Franchise Tax Act (Gen.Laws, Act 8488, Vol. 2, p. 3858, Stats.1929, pp. 19, 24, amended by Stats.1931, p. 2226, Stats. 1935, p. 965), was similar to 59–13–20, U.C.A.1953.

system of apportionment by the formula method in order to prevent overtaxation to the corporation or undertaxation by the state."

The California court observed that the only limitation on the use of a formula in the allocation or apportionment of income of a unitary business is that the formula must not be intrinsically arbitrary or produce an unreasonable result. It concluded: "* * * it is our opinion that the unitary nature of appellant's business is definitely established by the presence of the following circumstances: (1) unity of ownership; (2) unity of operation as evidenced by central purchasing, advertising, accounting and management divisions; and (3) unity of use in its centralized executive force and general system of operation."

The United States Supreme Court, in affirming the Butler Bros. case,[9] stated:

"One who attacks a formula of apportionment carries a distinct burden by 'clear and cogent evidence' that it results in extraterritorial values being taxed."

The court observed that it need not impeach the separate accounting system used by the appellant to say that it does not prove its assertion that extraterritorial values are being taxed, for the results of the accounting system employed by appellant do not impeach the validity or propriety of the formula which California has applied here. It further stated:

"At least since Adams Exp. Co. v. Ohio State Auditor, 165 U.S. 194, 17 S.Ct. 305, 41 L.Ed. 683, this Court has recognized that unity of use and management of a business which is scattered through several States may be considered when a State attempts to impose a tax on an apportionment basis. * * * California may properly treat appellant's business as a unitary one. (citation omitted) There is unity of ownership and management. And the operation of the central buying division alone demonstrates that fuctionally the various branches are closely integrated. * * *

"We cannot say that property, payroll, and sales are inappropriate ingredients of an apportionment formula. We agree with the Supreme Court of California that these factors may properly be deemed to reflect 'the relative contribution of the activities in the various states to the production of the total unitary income', so as to allocate to California its just proportion of the profits earned by appellant from this unitary business. And no showing has been made that income unconnected with the unitary business has been used in the formula."

In Crawford Manufacturing Co. v. State Commission of Revenue and Taxation,[10]

9. 315 U.S. 501, 62 S.Ct. 701, 86 L.Ed. 991 (1942).

10. 180 Kan. 352, 304 P.2d 504 (1956).

the Kansas Supreme Court rejected the taxpayer's contention that its return should be based upon a separate accounting method and affirmed an order of the Tax Commission which determined that because of the taxpayer's unitary character, the separate accounting method did not clearly reflect the net income attributable to the state and that the income to be allocated must be calculated by the factor formula method. With regard to the question of what is a unitary business, the court stated:

"* * * the test is whether a business' various parts are interdependent and a mutual benefit so as to form one busines rather than several business entities and not whether the operating experience of the parts is the same in all places. (citations omitted) Various portions of a business may be carried on exclusively in different states without destroying its unitary character if the integral parts are of mutual benefit to one another. * * *

"Whether a particular multi-state business is separate or unitary depends upon the manner in which its business is conducted.

* * * * * *

"* * * the authorities, we believe, preponderate in holding that the direct or separate accounting method may not be properly employed to determine the amount of income earned in a particular state where it was derived from a unitary business. Instead, the factor formula should be employed, thus giving weight to the different factors responsible for earning the income so as to apportion it from the entire business among the states in which it was earned."

The Kansas court concluded that the taxpayer's business was unitary in character as evidenced by the facts that the complete and ultimate direction of its operations were vested in its home office where the books of account and records were kept, its fiscal policies were planned and carried out, its advertising methods were adopted, and central purchasing was maintained. There was a unity of ownership and management, and the operation of the central purchasing division clearly demonstrated that the home office and other units stood in the relationship of reflected dependency, mutual contribution, and mutual benefit.

█ In the instant case, the Tax Commission has argued that it is unnecessary to resort to the formula provided in subsection (6) if the taxable net income from business within this state can be clearly ascertained. It endeavors to substantiate this argument with citations from jurisdictions that have adopted such a rule.[11] However, as previously pointed out, these cases dealt with statutes providing that direct allocation be

11. Note 2, supra.

made where practicable from the books of account, where such methods substantially reflect the net income and that indirect allocation (apportionment formula) be adopted only where the nature of the business renders direct allocation impracticable or where the books of account do not substantially reflect the net income subject to the tax. This argument is contrary to our statutes and without merit.

This court has previously held in Kennecott Copper Company v. State Tax Commission [12] that the Tax Commission should follow the rules as provided in subsection (6) unless the statutory formula fails to accomplish the overarching purpose as revealed by subsection (8), i. e., by application of the rules, there is a failure to allocate to this state a proportion of net income fairly and equitably attributable to this state or where the rules would subject the taxpayer to double taxation.

The statutory formula is an effective device to avoid double taxation, for as the California Supreme Court observed:[13]

"If an allocation arrangement were employed in each taxing state involved, Superior (the taxpayer) would pay taxes to each of the various states based on such state's pro rata share of that amount, which shares could not exceed 100% of the amount."

■ In the instant case, there has been no evidence appertaining to double taxation; the issue is which method of allocation fairly reflects the net income attributable to Utah. We hold that, if the operations of a multi-state corporation be unitary in character, the proportion of net income to be allocated to this state must be determined by the statutory formula (subsection (6)) unless the party opposing the application of such formula shall prove by clear and convincing evidence that the taxes so imposed are grossly disproportionate to the business conducted in this state or subjects the taxpayer to double taxation. As observed in the Butler Bros. case,[14] the use of a reasonable formula method to compute the net income to one state by a unitary business operated in several states does not tax extra-territorial values.

The Tax Commission, in effect denying plaintiff's unitary character, contends that plaintiff's Utah income is separable from its foreign income and, thus, may be taxed in its entirety by this state. In a recent case [15] a similar argument was presented to the California Supreme Court, i. e., that

12. 118 Utah 140, 221 P.2d 857 (1950).
13. Superior Oil Co. v. Franchise Tax Board, 60 Cal.2d 406, 34 Cal.Rptr. 545, 386 P.2d 33 (1963).

14. Notes 7 and 9, supra.
15. Honolulu Oil Corp. v. Franchise Tax Board, 60 Cal.2d 417, 34 Cal.Rptr. 552, 386 P.2d 40 (1963).

the allocation formula was inappropriate because the taxpayer's business was not unitary. The California Franchise Tax Board contended that, although the factors of central management and central performance of service functions were present, there was no unity of operation at the local level, which the Board considered essential, to support the conclusion that the taxpayer was a unitary business.

■ The court reiterated the decisional law that the unitary nature of a business was definitely established by the presence of the following three factors: (1) unity of ownership, (2) unity of operations as evidenced by a central purchasing, advertising, accounting, and management divisions, and (3) unity of use in its centralized executive force and general system of operation. It observed that the unity of operations was satisfied by evidence that the purchasing, accounting, and management were centrally controlled.

Even if the Tax Board's contention were directed to a demonstrated unity at the local level of operations, this too appeared to be satisfied. The California court found that the taxpayer was not operating two distinct types of business, each with marked characteristics of a unitary operation; the operations of the entire company were made possible through the funds, personnel, and "know-how" from company-wide resources. The individual local level operations were

not an end in themselves but a part of the corporation's scheme to create revenues.

In our opinion, the crucial issue in the instant case is whether the plaintiff taxpayer operates a unitary business and is therefore entitled to report its taxable net income by the statutory formula method of apportionment provided in subsection (6).

■ There is nothing in the record to substantiate the Commission's finding that plaintiff's business was not unitary, but, on the contrary, there is contained in the record an uncontroverted memorandum submitted by plaintiff as to its unitary character.

It is set forth in the memorandum that the corporation's only permarent home office is located in Sioux City, Iowa, from whence its executive, administrative, and financial affairs are directed. At this location, the president and other principal officers maintain their offices, the board of directors holds its meetings, and all of the general company personnel, including the chief engineer, the chief accountant, and managers of the various departments are situated.

The corporation's property and equipment are maintained at the central office, where the equipment is purchased and transferred from job to job. When a project is commenced, the executive personnel give the project manager a control list of

suppliers from whom he can acquire major items to be used at the project. Major purchases are either made or approved at the central office. Only repair parts and minor supplies are purchased locally at the site of the project.

The central office hires all the permanent employees, such as·project managers, project engineers, project accountants, construction superintendents, and master mechanics. These people move from project to project and are often times transferred prior to the completion of a project. The only people hired at the site of local operations are the laborers, nonsupervisory and some clerical help.

The project payroll is prepared at the job site, where a separate set of books are maintained, but reports on these books are forwarded to the home office. From these reports, the central office applies depreciation and overhead costs, and the financial statements are prepared by the general accounting office. The banking functions are handled by the home office. The chief accountant periodically transfers money to local bank accounts from the corporation's general account to cover the local payroll checks at each project. All receipts are processed through this main office. All permanent records in connection with payrolls of each project are maintained at the central office, where quarterly payroll reports to the various governmental agencies are prepared.

All bidding, major supply and equipment purchasing are handled by the Sioux City office. The individual project managers are summoned there regularly to review the progress on their assigned projects. All managerial functions and duties are reposed exclusively in the personnel at the home office, while the project managers perform, primarily, ministerial functions.

■ The foregoing recital establishes that the Utah project was not a separate but rather an integral part of a larger unitary system of a business as evidenced by the unitary method of ownership, use and operation. Under these facts, the propriety of the allocation formula of subsection (6) is established, for the separate accounting method is only appropriate to determine the net income of a separable business and would be grossly inadequate in ascertaining the true results of the activities and values attributable to this unitary business conducted both within and without Utah. .

■ The Tax Commission argues, however, that contractors should not be allowed to use the statutory formula by posing a hypothetical application of the various situations in which a very profitable contract would result in little or no net income to be allocated to this state. It conjectures that there would be nothing to allocate to the property factor if the corporation rented the necessary equipment; the wage and salary factor would be zero if the work were subcontracted; and, no gross receipts could

be assigned to Utah if the location of the main office were out of the state.

Justice Pratt, in his concurring opinion in the Kennecott case [16] specifically noted the danger of using hypotheticals to avoid application of subsection (6); he stated:

" * * * To attack the application of the formula upon possibilities of complications in that application is, in effect, to attack the formula for its inherent deficiencies, and the remedy for that lies with the legislature, not with the Commission, nor with the court. Paragraph 8 says the Commission may act on its own formula if the legislative formula *'does not'* allocate properly, not because under possible future contingencies it *'might not'* make a proper allocation. This distinction becomes important upon a review such as this for this reason: If we measure the Commission's action only by possibilities, then the review becomes almost useless, as many very logical future possibilities may be imagined."

 In the instant case, the Tax Commission further contends that an application of the statutory formula is inequitable because, in the gross receipts' factor, none of the plaintiff's sales are apportionable to Utah.

16. Note 12, supra.

17. Note 1, supra.

Justice Wolfe, in his concurring opinion in the California Packing case,[17] observed that the purpose of the three-factor formula was to provide a rough but equitable method of making a proper allocation, and if one factor tended to allocate a disproportionate amount of net income, the other factors tended to compensate for this matter.

In Butler Bros. v. McColgan,[18] the California Supreme Court elaborated on this issue and stated that to rebut the presumption of the fairness of the formula, there must be clear and cogent evidence directed to each element of the equation to prove that the assumed relation among the various factors produced an erroneous result.

The Tax Commission's conclusion that none of the plaintiff's gross receipts was apportionable to this state is at variance with one of their own regulations. Regulation No. 1, Subject: Allocation of Net Income reads:

"2. Gross Receipts Fraction. In the case of a corporation which derives income from sources within this state, but maintains no office within this state from which sales are negotiated or effected, the gross receipts assignable to Utah shall include all receipts of the corporation for services performed within this state. * * *"

18. Note 7, supra.

This regulation is consonant with the provisions of 59–13–20, U.C.A.1953.

The Tax Commission evidently was under the impression that, in a proposed apportionment of plaintiff's income, the terms "sales" and "gross receipts" must be considered synonymous; and therefore, subsection (6) (e) (1st) prohibited the inclusion of any of plaintiff's receipts for work performed in Utah. The relevant statutory provisions read as follows:

> 59–13–20(6) (c). "Of the remaining third, such portion shall be attributed to business carried on within this state as shall be found by multiplying said third by a fraction whose numerator is amount of the corporation's gross receipts from business assignable to this state, and whose denominator is the amount of the corporation's gross receipts from all its business. * * *

> * * * * * *

> "(e) The amount of the corporation's gross receipts from business assignable to this state shall be the amount of its gross receipts for the taxable year from * * *.

> "(1st) Sales, except those negotiated or effected in behalf of the corporation by agents or agencies chiefly situated at, connected with or sent out from premises for the transaction of business owned or rented by the corporation outside this state, and sales otherwise determined by the tax commission to be attributable to the business conducted on such premises."

In the instant case, plaintiff's gross receipts from business in Utah were derived under the following circumstances: the corporation received an invitation to bid on the Kennecott stripping job; it dispatched engineers to inspect the site of the work, who then returned to the central office to prepare a bid which was then signed and delivered to Kennecott in Salt Lake City. Subsequently, Kennecott notified plaintiff that its bid was accepted and forwarded a contract, already executed by Kennecott, to plaintiff at Sioux City. Plaintiff signed the contract and returned it to Kennecott.

Does the fact that the contract, under which plaintiff had gross receipts in Utah, was consummated in another state prohibit the inclusion of such receipts in the numerator of the gross receipts of the statutory formula? We think not, for the purpose of the franchise tax is to require the taxpayer to pay a tax on that portion of its net income fairly attributable to its Utah activities—this, regardless of where the contract was executed.

Subsections (1), (2), (3), and (4) of 59–13–20 recognize the classes of income that are to be directly allocated. Subsection (6) then requires the remainder of the net income to be apportioned by a three-factor ratio, if the corporation carries on any business outside the state. The entire stat-

utory scheme clearly reveals a legislative intent that the remainder of net income, after the specified exceptions listed, was subject to apportionment. There is no indication that the legislature intended by the use of the term "sales" to define or limit the levy of the tax on that part of net income which was subject to apportionment. The purpose of subsection (6) (e) (1st) was to provide an additional method of calculation for apportioning to this state the business income reasonably attributable to property owned or business done within this state, namely the disposition of tangible or intangible property held for sale in the regular course of business.[19] It is not made to appear in this proceeding that application of the formula provided for in subsection (6) in the manner we have just stated, would not allocate to this state the proportion of plaintiff's net income fairly and equitably attributed to it. Unless this is made to appear by clear and cogent evidence the formula should be applied.

This court holds that plaintiff, Western Contracting Corporation, conducted a unitary business in 1962 and was entitled to apportion its taxable net income by the statutory formula, but that it should assign to the numerator of the gross receipts fraction, the gross receipts received from the Kennecott operation. In view of the foregoing, it is unnecessary to decide whether the Tax Commission should have allowed a deduction for federal income taxes computed on a projected basis.

Reversed and remanded for a determination in accordance with this opinion. No costs awarded.

McDONOUGH, CROCKETT, and WADE, JJ., concur.

HENRIOD, C. J., concurs in the result.

19. Twentieth Century-Fox Film Corp. v. Phillips, 76 Ga.App. 825, 47 S.E.2d 183 (1948).