# UTAH CONSTRUCTION AND MINING
## COMPANY *v.* COMMISSION

John D. Mosser, Portland, Oregon, represented plaintiff.

Walter J. Apley, Assistant Attorney General, Salem, Oregon, represented defendant.

Decision for plaintiff rendered February 14, 1969.

EDWARD H. HOWELL, Judge.

The commission issued a deficiency against the plaintiff's corporate excise taxes for the fiscal years ending October 31, 1963, 1964 and 1965, and plaintiff appealed. The issue is whether plaintiff, a multi-state corporation, should report its Oregon income by using the segregated method of reporting or the apportionment method as the commission required.

During the tax years involved ORS 314.280(1) stated:[1]

"Allocation of income and losses of corporation or nonresident individual from business within and

[1] ORS 314.280 was amended by Or L 1965, ch 152, but the amendment stated that it was effective for tax years beginning on and after January 1, 1965. Plaintiff's last tax year began November 1, 1964.

without state. (1) If the gross income of a corporation or a nonresident individual is derived from business done both within and without the state, the determination of net income shall be based upon the business done within the state, and the commission shall have power to permit or require either the segregated method of reporting or the apportionment method of reporting, under rules and regulations adopted by the commission, so as fairly and accurately to reflect the net income of the business done within the state."

The facts have been stipulated. The plaintiff is a Delaware corporation whose home office and principal place of business is San Francisco, California. The plaintiff builds industrial plants, military establishments, railroads, industrial parks, complete residential communities and has constructed dams and power plants including Hoover and Grand Coulee dams.

Plaintiff's corporate organization has three divisions: construction, mining and land development, which are administratively and operationally separate. Each division is headed by a senior vice president who is virtually autonomous in the operation of his division and there is little interchange of employees between the various divisions. The plaintiff has legal, general corporate accounting and purchasing staffs at its home office which serve all three operating divisions to a limited extent. New projects are subject only to general approval by plaintiff's executive committee, which consists of its chairman of the board of directors, its president and a senior vice president. Generally, once the executive committee has approved a project the division involved proceeds with the operation of the project, including coordination of accounting functions in the division.

Plaintiff constructed the Detroit and Big Cliff dams on the North Santiam River in Oregon in 1953. After that it had no activity in Oregon until it started construction of the Round Butte Dam on the Deschutes River as the general contractor for Portland General Electric Company. During plaintiff's fiscal years 1962, 1963 and 1964, the Round Butte project was plaintiff's sole activity in Oregon. During plaintiff's fiscal year 1965 the construction of Round Butte Dam was plaintiff's principal activity in this state but plaintiff also participated as a nonsponsoring joint venturer in another Oregon project from which it derived no significant revenue.

The plaintiff secured the Round Butte project by bid which was prepared by its construction division and approved by the executive committee. The bid preparation and the legal work in settlement of accounts were done at plaintiff's home office in San Francisco. After the contract was awarded to plaintiff the construction division assigned one of its permanent employees as project manager and he supervised the project at the job site. With the exception of certain key personnel most of the labor was recruited at the job site for that project alone. The entire payroll for the project, including that for a few permanent employees, was handled at the job site where a complete set of separate accounting records for the job was maintained. Equipment for the job was ordered by the project manager and in general was either specially purchased by plaintiff's central purchasing staff or transferred from its equipment pool. Over 77 percent of the dollar cost of the equipment was disposed of upon completion of the project. Less than 3 percent was physically used by plaintiff on any subsequent job while about 20 percent of the

equipment was temporarily rented prior to disposition. Most other purchases were made locally.

The plaintiff started the project in its fiscal year 1962 and sustained a loss on the Round Butte project in each of its fiscal years 1963, 1964 and 1965. Using the segregated accounting method its loss for the three years was $2,194,110 without any charges being made against the project for construction division, home office general and administrative expense or for use or depreciation of equipment on the job. The project would have shown a loss each year even if no salaries for plaintiff's permanent employees on the job had been charged against the project. With normal depreciation of equipment, but without division or home office overhead, the fiscal year losses, using the segregated method of accounting, would have been $2,543,410 in 1963, $2,335,897 in 1964 and $851,361 in 1965. As a result of these losses the plaintiff's construction division as a whole sustained losses in fiscal years 1963 and 1964.

The plaintiff filed its corporate excise tax returns for 1962 through 1965 using the segregated method of reporting income for Oregon operations rather than the apportionment method which the commission contends it should have done.

Under ORS 314.280, *supra*, where gross income of a corporation is derived from business done both within and without the state, the tax commission is given authority to permit or require either the segregated method or apportionment method of accounting under proper regulations so that either method of reporting will "fairly and accurately * * * reflect the net income of the business done within the state." It is easy to see that the primary intention of the legislature was not to endorse any particular method of

reporting nor to direct the commission to do so by regulation. The only legislative directive to the commission was to adopt regulations pertaining to either method of reporting which would fairly and accurately reflect the taxpayer's net income from the business done within this state. Regulation 314.280 adopted by the commission also recognized that the primary objective was to require a method of reporting which would fairly and accurately reflect the net income from the taxpayer's business done within this state. Subsection (1)–(A) of the regulation states in part:

"* * * The method to be used in determining the portion of the total income that is properly allocable to this state depends upon the circumstances in each case, and no rule of universal application can be stated."

The regulation is not clear concerning the effect of whether the business is unitary or not. Subsection (1)–(A) states that "[T]he segregated accounting method (Reg 314.280(1)–(C)) is *appropriate* where the business or activity in and out of the state cannot be classed as unitary." (Emphasis supplied.) Subsection (1)–(B) states:

"If the business of the taxpayer is carried on both within and without this state, and the income properly attributable to Oregon may be fairly reflected *only* by treating the business within and without the state as a unitary business, the apportionment method must be used." (Emphasis supplied.)

Subsection (1)–(C) states:

"If the business is such that the use of the apportionment method is not required by Reg. 314.280 (1)–(B), then the income arising from the business conducted within this state must be determined by the separate accounting method."

· ■ ·One thing is absolutely clear: in reporting Oregon income the commission may require a taxpayer to use the method of reporting which will most fairly and accurately reflect the net income of the taxpayer done within this state, and such method depends upon the circumstances involved in each case. No one system of reporting is endorsed over another as long as the method used will accomplish the purpose mentioned.

· ■ In this case whether the taxpayer is unitary or not makes no difference because the apportionment method will not fairly and accurately reflect the net income of the business done within this state. Although the amount spent by plaintiff on the construction of the Round Butte Dam from 1962 through 1965 was certainly of substantial benefit to the Oregon economy, the loss to plaintiff from the project amounted to over $2,000,000 utilizing the segregated method of accounting without any charges being made against the project for the general and administrative expense of the construction division or home office or for use or depreciation of equipment on the job. With such depreciation, but without the home office overhead, the losses for the fiscal years 1963 through 1965 would have been over $5,000,000.

■ The case of *Butler Brothers v. McColgan*, 315 US 501, 62 S Ct 701, 86 L ed 991 (1942), cited by defendant is not applicable. In *Butler* the taxpayer, an Illinois corporation engaged in wholesale merchandising, maintained wholesale distributing houses in several states including California. Each of the wholesale outlets had its own sales force and handled its own collections and kept its own records. The home office did the central buying for the individual houses and all purchases were made from the central office. The

actual cost of operating the central buying division was allocated among the houses. Certain other expenses of the main office, including executive salaries, accounting and central advertising, were allocated to the individual houses. Seventy-five percent of the expenses allocated to the San Francisco house would have been incurred even though the San Francisco house was not operated. When these expenses were charged against the income from the San Francisco house it showed a loss but the taxpayer's overall operations showed a profit, a portion of which the taxing authorities in California assigned to the California house. The United States Supreme Court upheld the California apportionment and held that the taxpayer's business was unitary and emphasized the importance of the central buying division and the fact that it was instrumental in overall savings.

In *Butler* the claimed loss from the operations of the San Francisco house amounted to $82,000 and the amount of the allocated central expense charged to the San Francisco house was $100,000, 75 percent of which would have been incurred even if that house was not operated. In the instant case, according to the stipulation, the loss of $2,000,000 on the Round Butte project was incurred without charge for the home office general or administrative expenses or for depreciation of equipment used on the job. In *Butler* the Supreme Court held that there was no justification for a finding that the activities of the San Francisco house did not contribute to the central savings. Here, as the plaintiff contends, the only contribution that Round Butte made to the plaintiff's overall operations was to cause the plaintiff's construction division as a whole to show losses in 1963 and 1964.

■ The primary difference between plaintiff's case

and *Butler* is that the Supreme Court likened Butler's wholesale selling activities to a corporation which is engaged in manufacturing and selling its product. In such cases all the factors involved in the enterprise are essential to the realization of profits. Here, during the period involved, the plaintiff conducted one separate construction project in this state which was not related to its other construction projects elsewhere. In the past the tax commission has recognized this distinction and restricted general contractors engaged in construction to the segregated method of reporting Oregon income. In its Audit Section Bulletin No. 27 quoted in LDA April 11, 1958, the commission stated:

> "With the exception of a few taxpayers engaged both in general contracting and other inseparable activities within and without Oregon, who have been permitted to file their retuurns upon an apportioned basis, the commission has historically restricted general contractors to the use of the segregated method of filing."

See also LDA of 1248, Dec. 14, 1955.

■ The defendant also relies on the case of *Western Contracting Corp. v. State Tax Comm.*, 18 Utah2d 23, 414 P2d 579 (1966). While that case involved the proper method of reporting income earned in Utah by an Iowa corporation engaged in the general construction business, the Utah statute required the use of the apportionment method unless such method did not allocate to Utah the proportion of net income fairly and equitably attributable to Utah. The Oregon statute ORS 314.280, *supra,* does not so provide. As previously mentioned, the Oregon statute does not endorse either method but requires only that the method used should fairly and accurately reflect the net income of the business done within the state.

■ The apportionment method of reporting if required in this case would not fairly and accurately reflect the net income of plaintiff's activities in Oregon in constructing the Round Butte Dam. The facts clearly justify the plaintiff's use of the segregated method of reporting its income received in Oregon during the plaintiff's fiscal years 1963, 1964 and 1965.

The commission's order assessing deficiencies against the plaintiff is set aside.