In the Matter of REUTERS LIMITED, Petitioner, v TAX APPEALS TRIBUNAL et al., Respondents.

Third Department, June 11, 1992

### APPEARANCES OF COUNSEL

*Weil, Gotschal & Manges (Steven A. Reiss, Philip T. Kaplan* and *John P. Steines* of counsel), for petitioner.

*Robert Abrams, Attorney-General (Daniel Smirlock* and *Peter H. Schiff* of counsel), for Commissioner of Taxation and Finance of the State of New York, respondent.

### OPINION OF THE COURT

YESAWICH JR., J.

Petitioner is a corporation organized in the United Kingdom with a branch office in New York City serving as its main office in the United States. The branch office has no corporate or jural identity separate from the corporation of which it is a part. Petitioner appeals from a determination of respondent Tax Appeals Tribunal affirming the determination of an Administrative Law Judge upholding New York's corporate franchise tax, which is calculated on the basis of the portion of petitioner's corporate worldwide net income that can be allocated to the activity conducted in New York (hereinafter the worldwide net income apportionment method) *(see,* Tax Law § 208 [9] [c]; § 209 [1]; § 210 [1] [a]; [3]).

Petitioner, which was engaged in the business of supplying news, economic and financial information by electronic means to newspapers, banks and other interested entities in approximately 80 countries worldwide, calculated its 1977, 1978 and 1979 New York corporation franchise tax solely on the basis of income from United States sources; significantly, petitioner suffered losses in New York but earned profits abroad during these tax years. In 1983 the Department of Taxation and Finance issued notices of deficiency for such tax years in the total amount of $1,280,000; the amount owed was calculated using the worldwide net income apportionment method. Asserting that this method violated the nondiscrimination clause of a United States-United Kingdom tax treaty (Convention Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and

Northern Ireland for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and Capital Gains, art 24, § 2, 31 UST 5670, 5687 [hereinafter the US-UK Tax Treaty]) and the Foreign Commerce Clause of the Federal Constitution (US Const, art I, § 8), petitioner sought a redetermination of the deficiency from the Tax Appeals Tribunal. As a result of a conference held by the parties and additional information supplied by petitioner, the total deficiency amount was reduced to $96,168; the request for redetermination was thereafter twice modified and perfected. The Department of Taxation and Finance answered, a hearing was held, and the Administrative Law Judge denied the petition and sustained the notices of deficiency as modified at the conference. Petitioner filed exceptions with the Tribunal. When the exceptions were denied petitioner commenced the instant proceeding seeking, *inter alia*, an annulment of the Tribunal's determination. Respondent Commissioner of Taxation and Finance answered and submitted the documents constituting the record before the Tribunal.

█ Tax Law § 209 (1) requires that "[f]or the privilege of exercising its corporate franchise, or of doing business, or of employing capital, or of owning or leasing property in this state in a corporate or organized capacity, or of maintaining an office in this state * * * *every domestic or foreign corporation* * * * shall annually pay a franchise tax, upon the basis of its entire net income" (emphasis supplied), which includes income earned "within and without the United States" (Tax Law § 208 [9] [c]; *see,* 20 NYCRR 1-3.2 [2]; 3-2.2 [a]). Because it treats domestic and foreign corporations uniformly, such tax does not violate the US-UK Tax Treaty's nondiscrimination clause (31 UST 5670, 5687). That clause provides that "[t]he taxation on a permanent establishment which an enterprise of a Contracting State has in the other Contracting State shall not be less favorably levied in that other State than the taxation levied on enterprises of that other State *carrying on the same activities" (id.* [emphasis supplied]). Although petitioner urges that this clause requires a comparison between the taxation on its United States branch located in New York and a New York corporation engaged in conducting business solely in New York, inserting the appropriate definitions of the US-UK Tax Treaty *(see, id.,* at 5671-5674) we believe the nondiscrimination clause requires a comparison, as propounded by the Attorney-General, between the taxation of petitioner's United States branch located in New York and

the taxation of a United States corporation having a branch in New York and conducting international business through branch offices in other countries.

We consider the clause ambiguous with regard to whether the phrase "carrying on the same activities" refers to the activities of the permanent establishment, i.e., the branch, or to the corporation of which the branch is a part, i.e., petitioner *(see,* Gifford, *Permanent Establishments Under the Nondiscrimination Clause in Income Tax Treaties,* 11 Cornell Intl LJ 51 [1978]). What must not be lost sight of is the fact that the tax here is a franchise tax imposed on petitioner, the corporate entity, and that a United States corporation "carrying on the same activities" as the petitioning corporation with a New York branch and worldwide branch activities would be subject to the very same tax as petitioner. And petitioner, like a United States corporation, could have elected to do business in New York in subsidiary form rather than branch form and thus avoided the tax consequences which it finds objectionable *(see,* 20 NYCRR 6-2.5 [b]).

The US-UK Tax Treaty's legislative history confirms that the limitation the Treaty imposes on State taxation does not extend so far as to prohibit the tax methodology employed here. That history clearly manifests an intent, at least where a single corporation is involved, to allow the States the freedom to tax branches of a United Kingdom corporation on the basis of the corporation's worldwide income as allocated to each state. As the Senate Executive Report illustrates, if "for example * * * a U.S. branch of a British corporation does business in a state, that state * * * may take into account the income and assets of any other branches of that corporation, wherever located, because a corporation is considered to be a single enterprise regardless of how many separate branches or businesses it has" (Senate Exec Rep No. 95-18, 1980-1981 CB 411, 420; *see,* Senate Exec Rep No. 96-5, 1980-1981 CB 440, 441; Treasury Dept Technical Explanation of the Convention, 1980-1981 CB 455, 462). The foreign decisions brought to our attention by petitioner do not compel a conclusion different from that which we have reached.

As for the argument that New York's worldwide net income apportionment method violates the Foreign Commerce Clause, it too is of no avail *(see generally,* Note, *State Worldwide Unitary Taxation: The Foreign Parent Case,* 23 Colum J Transnatl L 445 [1985]). The United States Supreme Court held in *Bass, Ratcliff & Gretton v Tax Commn.* (266 US 271)

that a New York tax imposed on a British corporation for the privilege of doing business in New York through its branches here, and measured by the allocated income accruing from the business conducted inside and outside of New York in the preceding year, did not burden foreign commerce. Contrary to petitioner's suggestion, this decision is still viable *(see, Mobil Oil Corp. v Commissioner of Taxes,* 445 US 425, 438-439; *Barclays Bank Intl. v Franchise Tax Bd.,* 2 Cal 4th 708, 8 Cal Rptr 2d 31).

Petitioner's claim that the methodology discriminates against foreign commerce *(see, Japan Line v County of Los Angeles,* 441 US 434, 444-445) rests on its concern that it will force petitioner to expend prohibitively large sums of money to undertake the accounting and property valuations necessary to comply, a burden not visited on United States corporations because their income and deductions are already computed in United States currency amounts. There may be occasion when proof of the cost of compliance warrants a finding that a State's tax laws discriminate against foreign commerce *(cf., Bibb v Navajo Frgt. Lines,* 359 US 520, 526). That, however, is not the factual circumstance presented here for the averment of petitioner's Financial Manager of Taxation that the cost of compliance would be nearly $1 million per year is sorely undermined by the fact that petitioner was able to promptly supply information to the Tribunal to reduce the deficiencies initially indicated.

■ Similarly unsupported is petitioner's contention that the tax contravenes United States' foreign policy as enunciated by the Federal Government *(see, Japan Line v County of Los Angeles, supra,* at 451). While the tax at issue obviously has a foreign resonance, there is no evidence that as a matter of foreign policy Federal uniformity with respect to State taxes on foreign corporations for the privilege of doing business in the taxing State in branch form has been deemed essential by the Federal Government *(see, supra,* at 448; *see also, Container Corp. v Franchise Tax Bd.,* 463 US 159, 194). To the contrary, while the US-UK Tax Treaty provides that income tax liability to the Federal Government is to be calculated solely on the extent of petitioner's United States-based activity (as a consequence of which petitioner paid no Federal income taxes for the three tax years at issue *[see,* 26 CFR 1.11-1]), it does not so limit the State's taxing activity, except to require that such activity be, as previously observed, nondiscriminatory *(see, Wardair Canada v Florida Dept. of Revenue,* 477 US 1, 9).

Lastly, insofar as petitioner's contentions are predicated on the rationale advanced by the California Court of Appeals in *Barclays Bank Intl. v Franchise Tax Bd.* (232 Cal App 3d 1187, 275 Cal Rptr 626), it suffices to note that this decision was recently reversed by the California Supreme Court *(Barclays Bank Intl. v Franchise Tax Bd.,* 2 Cal 4th 708, 8 Cal Rptr 2d 31, *supra).* Accordingly, we conclude that there is insufficient evidence to establish that New York's worldwide net income apportionment method of franchise taxation discriminates against petitioner in foreign commerce or is an aberration of national policy where uniform national policy has been deemed essential.

MIKOLL, J. P., LEVINE, MERCURE and HARVEY, JJ., concur.

Adjudged that the determination is confirmed, without costs, and petition dismissed.